James E. BOWLES, Jr., individually, and, James E. Bowles, Jr., and Company, a Partnership, Appellants (Defendants),

v.

SUNRISE HOME CENTER, INC., a Wyoming corporation, Appellee (Plaintiff).

No. 92–124.

Supreme Court of Wyoming.

March 1, 1993.

Curt A. Haws of Mullikin, Larson & Swift, Jackson, for appellants.

C. David Clauss, Jackson, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT* and GOLDEN, JJ.

GOLDEN, Justice.

The owner of a newly constructed office building, Dr. James Bowles (Bowles), appeals a judgment in favor of a materials supplier, Sunrise Hardware Inc. (Sunrise), based on unjust enrichment. We affirm in part and reverse in part.

Bowles presents two issues:

I. Whether the District Court erred in finding that Appellants have been unjustly enriched where the undisputed testimony and the District Court's findings establish that Appellants have already paid more than the amount they had contracted to pay for construction of an office building?

II. Whether the District Court erred in assessing prejudgment interest at the annual rate of twenty-one percent (21%) where that percentage rate is based on a contract to which the appellants were not a party?

## BACKGROUND

Bowles entered into a written contract for the construction of a pre-fabricated office building with a general contractor, Homestead Properties (Homestead), on June 19, 1990. Bowles signed the contract on behalf of a partnership, Bowles and Co., consisting of Bowles and his wife as partners. At the time, Bowles and Co. had title to the property where the building was to be constructed (hereinafter "Bowles" includes both Bowles and Bowles and Co.).

The total purchase price agreed to was $228,577.48, which was to be paid in increments. Bowles made an initial down payment of $22,000 to Homestead when the contract was signed and a second payment of $164,896.48 to the pre-fabrication company in late November, 1990, after delivery of the pre-fabricated building.

In November, 1990, Homestead opened a standard "job account" with Sunrise, a supplier of construction materials.[1] Homestead opened this job account specifically to supply the Bowles office building project. During the period of construction of the building, a total of $9,262.15 was charged by Homestead, Bowles and a second contractor, Matt Thompson Construction (Thompson).

Bowles made a third payment on December 13, 1990, for $16,250 directly to Homestead, which like the previous payments was made with checks issued by the banking institution where Bowles had obtained financing. Sometime in January of 1991, Bowles became concerned about the pace of Homestead's progress. Due to his concern, Bowles enlisted a second contractor, Thompson, in order to expedite the project. For a brief period, Homestead and Thompson worked together without serious conflict; however, this amicable relationship rapidly deteriorated. Finally, Homestead simply quit working on the project, sometime in the spring of 1991, before completion. In addition to the amounts paid to Homestead, Bowles paid $23,000 to Thompson to complete projects required by the contract but which were not finished by Homestead.

In May, 1991, Homestead submitted a final bill to Bowles, which would have completed the contract payments. Bowles did not pay Homestead the final amount and subsequently Homestead failed to pay Sunrise the outstanding balance on the Bowles job account. The office building was completed by Thompson.

* Retired January 1, 1993.
1. Apparently, Homestead also had a "general account" with Sunrise.

In the summer of 1991, Sunrise filed suit against Homestead, Bowles, and Thompson under two separate theories. First, Sunrise sought to foreclose on a mechanic's lien filed against the property where Bowles' building was situated. Second, Sunrise sought recovery of the outstanding balance on the job account based on unjust enrichment. Bowles and Thompson answered and filed cross-claims against Homestead.

The district court granted Bowles' and Thompson's motion for partial summary judgment dismissing the mechanic's lien action because Sunrise failed to follow the strict statutory requirements of Wyoming's mechanic's lien laws. The day before trial, Homestead filed for bankruptcy, therefore requiring a stay of all actions against Homestead. On May 1, 1992, a trial was conducted on the issue of unjust enrichment between Sunrise and Bowles and Thompson. On May 12, 1992, the district court entered judgment in favor of Sunrise based upon unjust enrichment in the sum of $9,262.15 plus twenty-one percent interest per annum beginning April of 1991. This judgment was entered solely against Bowles because the court found that Thompson had been acting as Bowles' agent. It is from this judgment which Bowles now appeals.

## DISCUSSION

### Unjust Enrichment

■ In reviewing the district court's decision finding unjust enrichment and awarding damages thereon, we "accept the evidence of the prevailing party as true and disregard the evidence of the unsuccessful party." *Zitterkopf v. Bradbury*, 783 P.2d 1142, 1144 (Wyo.1989); *see also, Pancratz Company, Inc. v. Kloefkorn–Ballard Constr./Dev.*, 720 P.2d 906, 908–09 (Wyo. 1986). We presume the district court's findings to be correct and uphold those findings unless they are, "inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence." *Pancratz*, 720 P.2d at 909.

■ Unjust enrichment (or *quantum meruit*) is an equitable remedy which implies a contract so that one party may recover damages from another. *Zitterkopf*, 783 P.2d at 1144; *see also Landeis v. Nelson*, 808 P.2d 216, 218 (Wyo.1991). One seeking damages based on unjust enrichment must prove four elements:

(1) Valuable services were rendered, or materials furnished,

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and,

(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Zitterkopf*, 783 P.2d at 1144 (quoting *Johnson v. Anderson*, 768 P.2d 18, 25 (Wyo. 1989)). In addition, we recognize that an action for unjust enrichment will not lie where it would frustrate law or public policy, either directly or indirectly. *R.O. Corp. v. John H. Bell Iron Mountain Ranch Co.*, 781 P.2d 910, 913 (Wyo.1989).

■ Bowles asserts that permitting Sunrise to recover based on a theory of unjust enrichment would violate the public policy behind our mechanic's lien statutes. Thus, we must determine the availability of an unjust enrichment remedy to suppliers of building materials in light of our mechanic's lien scheme. Wyo.Stat. § 29–1–308 (1981) (Remedies not Exclusive) expressly provides that the lien remedies created within Title 29 are not exclusive; therefore, a materialman is free to pursue an action under unjust enrichment. However, those seeking recovery based on unjust enrichment must prove each required element of the theory.

■ The facts of this case clearly establish that valuable materials were furnished to and accepted by Bowles for use in the construction of Bowles' new office building. The more difficult question is, whether the evidence demonstrates that Sunrise furnished these materials under such circumstances as to reasonably notify Bowles that Sunrise expected to be paid by them.

Before we can answer this question it is necessary to explain, more explicitly, the circumstances involving the disputed job account with Sunrise. The Bowles job account was opened solely by Homestead and the account application was signed only by Peter Edington, Homestead's job foreman. Bowles' name was included on the account to identify the job but was placed there by Homestead. According to the president of Homestead, the only persons authorized to use the job account were several of his employees, but not Bowles or Thompson. The terms of the job account included a twenty-one percent finance charge on late payments. The total charges made on the job account were $9,262.15.

After Thompson was hired by Bowles, Thompson made numerous purchases from Sunrise, using the job account opened by Homestead, for material for the office building. Thompson's charges totaled $3,629.05. In addition, Bowles himself charged $62.25 for materials on the job account at Sunrise.

Because Homestead: (1) alone opened the account, (2) was the sole signatory on the account application, (3) was the only entity billed by Sunrise on the account, and (4) was bound contractually to supply material and construct Bowles' office building, we find that Bowles and Thompson were not reasonably notified that Sunrise expected to be paid by them on this account. However, we limit this finding to the amounts specifically charged by Homestead and its employees because when Bowles and Thompson charged supplies themselves they had reasonable notice that Sunrise expected to be paid for those charges.

In other words, we hold that no action for unjust enrichment lies against Bowles for the $5,570.85 of materials charged solely by Homestead. However, we also hold that Bowles was unjustly enriched by the amount which he and Thompson charged on the job account because their actions created reasonable notice that they were expected to pay. Therefore, the district court's judgment based upon unjust enrichment is reduced to $3,691.30.

In a fairly recent case with remarkably similar facts, the Vermont Supreme Court denied recovery under a theory of unjust enrichment. *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 531 A.2d 887 (1987). The Okcuoglus had contracted with a builder to construct a vacation home. The builder opened two accounts, a general account and a job account, with a materials supplier (Morrisville) and then purchased supplies for the Okcuoglu project. Problems arose between the Okcuoglus and the builder which resulted in termination of the builder before the home was complete. Okcuoglu paid the builder only two-thirds of the contract price but was forced to expend additional funds, beyond the contract price, to have the home completed. Unable to collect on the accounts from the builder, Morrisville sued the Okcuoglus based on unjust enrichment. *Morrisville*, 531 A.2d at 888. The Vermont Supreme Court declined to permit damages based upon unjust enrichment because the Okcuoglus paid for all the benefits it received; therefore, they were not unjustly enriched. *Morrisville*, 531 A.2d at 889.

*Prejudgment Interest*

█  As we noted previously, the district court ordered Bowles to pay prejudgment interest at a rate of twenty-one percent per year on the full amount of judgment, beginning in April, 1991. The district court based this assessment, presumably, on the rate agreed to when Homestead opened the Bowles job account at Sunrise, although it is not clear how the court settled upon the April date.

This court has applied a two-part test to be used in determining whether prejudgment interest is recoverable under the doctrine of unjust enrichment. *State v. BHP Petroleum Co.*, 804 P.2d 671, 673 (Wyo. 1991). That test is described as follows:

First, * * * "interest is recoverable on a liquidated but not on an unliquidated claims and that a claim is considered liquidated when it is readily computable by simple mathematical computations." * * * Second, * * * the "debtor must receive no-

tice of the amount due before interest starts to run."

*BHP Petroleum,* 804 P.2d at 673. It is undisputed that Sunrise's claim against Bowles is liquidated because the amount is readily computable from the invoices. When Bowles received notice of the amount due, however, is unclear and in dispute.

In *Horseshoe Estates v. 2M Co.,* 713 P.2d 776 (Wyo.1986), this court affirmed an order for prejudgment interest on damages awarded under a theory of unjust enrichment. The prejudgment interest was affirmed based on the knowledge which the appellant, Horseshoe Estates (Horseshoe), had concerning the claim. 2M Co. (2M) had contracted with Richard Shanor (Shanor) and Big Horn Country Club (Big Horn) to supply sprinkler materials for a golf course. 713 P.2d at 778. Although Shanor and Big Horn claimed to own the golf course, Horseshoe—a partnership which included Shanor as a partner—was the actual owner of the golf course. *Id.*

Shanor inspected and supervised progress at the golf course by 2M. Apparently after being refused payment for its contracted services, 2M successfully foreclosed a mechanic's lien against Big Horn, Shanor, and Horseshoe. Horseshoe appealed, challenging the order against it, which was based on unjust enrichment. Based on Shanor's relationship to 2M through the contract and to Horseshoe as a partner, Shanor's misrepresentation as the golf course owner, and because Shanor oversaw the sprinkler development on the golf course, this court found that Horseshoe had sufficient notice to grant prejudgment interest on the unjust enrichment judgment awarded to 2M. *Horseshoe Estates,* 730 P.2d at 782.

We cannot say that Bowles was informed of what to pay, and, therefore, had notice of the amount due on Sunrise's claim in April, 1991. Since the account was opened by Homestead and the purchases were then billed to Homestead, Bowles had no notice of the amount of debt in the account. Bowles did receive notice of Sunrise's claim when Sunrise sent notice of its intent to file a lien on May 22, 1991. However, that notice simply informed Bowles that the amount claimed was due from Homestead on an account opened by Homestead to supply the Bowles office project. Unlike in *Horseshoe Estates,* Bowles was not a party to the supply contract and did not closely oversee the project's process and, thus, had little reason to suspect he might be responsible for the interest on that debt. Therefore, we strike that part of the district court's order which granted Sunrise prejudgment interest.

Affirmed in part and reversed in part.