# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 133

OCTOBER TERM, A.D. 2014

October 28, 2014

RICHARD A. HORNING and MARY D.
HORNING,

Appellants
(Plaintiffs),

v.                                                    S-14-0067

PENROSE PLUMBING & HEATING
INC.,

Appellee
(Defendant).

*Appeal from the District Court of Campbell County*
The Honorable William J. Edelman Judge

*Representing Appellants:*
>    Ryan W. McGrath and J. David Horning of Cox, Horning & McGrath, LLC, Gillette, Wyoming. Argument by Mr. McGrath.

*Representing Appellee:*
>    Monty L. Barnett and Grant R. Curry of White and Steele, P.C., Denver, Colorado. Argument by Mr. Curry.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

*KITE, J., delivers the opinion of the Court; FOX, J., delivers a dissenting opinion, in which DAVIS, J., joins.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]   Richard A. and Mary D. Horning (Hornings) sustained damages from carbon monoxide poisoning after an exhaust pipe in the furnace in their home ruptured.  They filed a complaint against Penrose Plumbing & Heating, Inc. (Penrose) and others to recover damages for their injuries.  The district court granted summary judgment for Penrose after concluding the Hornings did not file their complaint within the applicable ten year statute of repose.  The Hornings appealed from the order dismissing their claim, asserting the district court misinterpreted the statute of repose.  We reverse.

## ISSUE

[¶2]  The issue for our determination is when the statute of repose contained in Wyo. Stat. Ann. § 1-3-111 (LexisNexis 2013) begins to run.

## FACTS

[¶3]   Mill Iron Partners, LLC, (Mill Iron) was a real estate developer in northeastern Wyoming.  In 2001, Mill Iron began development of property located in Gillette, Wyoming.  The project involved construction of three condominium units.  Mill Iron hired Woodcraft, Inc. (Woodcraft) as the project manager.  In that capacity, Woodcraft was responsible for supervising construction of the condominiums.  Woodcraft subcontracted with Penrose to install heating, ventilation and air conditioning (HVAC) systems, including gas forced air furnaces and duct work, in each of the units.

[¶4]   Penrose completed the installation of the HVAC system in August of 2001.  According to Mill Iron and Woodcraft, the condominium was substantially completed in early 2002.  However, Mill Iron did not pay the water tap fee required for the city to do the final inspections and issue a certificate of occupancy until August of 2003, eighteen months later.  The Hornings purchased one of the condominium units in 2004.

[¶5]  In January of 2012, eight years after they purchased the unit, the Hornings awoke to extreme cold temperatures.  They had headaches and shortness of breath and were confused and disoriented.  They called an HVAC technician who came to the home, inspected the system and found a rupture in the exhaust pipe.  He expressed concern that the Hornings had been exposed to carbon monoxide.  Later, they were diagnosed with having sustained severe carbon monoxide poisoning.

[¶6]  In 2012, the Hornings filed a complaint against Mill Iron, Woodcraft and Penrose alleging they were negligent in the course of constructing the home.  Specifically, they alleged Penrose had installed the HVAC system with the owner's manual and installation instructions wedged inside the exhaust pipe, which obstructed the flow of exhaust gases

1

and eventually caused the pipe to rupture, releasing carbon monoxide into the home. Mill Iron and Woodcraft settled the claims against them and were dismissed from the lawsuit.

[¶7] In its answer, Penrose admitted that it installed the HVAC system in the Hornings' home but denied any negligence. As an affirmative defense, Penrose asserted the Hornings' claims were barred by operation of § 1-3-111, the statute of repose which requires claims for alleged defective or unsafe conditions relating to improvements to real property to be brought within ten years of substantial completion of the improvement. Penrose filed a motion for summary judgment arguing that the claims against it must be dismissed pursuant to § 1-3-111 because they were not brought within ten years after Penrose completed its work on the HVAC system. Penrose submitted evidence showing it had completed the construction and installation of the HVAC system in August of 2001, eleven years before the Hornings filed their complaint.

[¶8] In response, the Hornings argued the ten year statute of repose did not begin to run until construction of the condominium was sufficiently completed such that they could utilize the home and, correspondingly, the furnace, for the purposes for which they were intended. The Hornings asserted no one was able to utilize the condominium and furnace until the city issued a certificate of occupancy in August of 2003. Because they filed their complaint in November 2012, nine years after the city issued the certificate, they asserted it was timely.

[¶9] After a hearing, the district court granted Penrose's motion for summary judgment. The district court concluded the ten year statute of repose found in § 1-3-111 begins to run when an improvement to real property is completed to a point where an owner can utilize the improvement, not when the entire project is complete. Because Penrose completed the HVAC system in 2001, the district court concluded the Hornings' complaint filed eleven years later was untimely. The Hornings timely appealed from the district court's order.

## STANDARD OF REVIEW

[¶10] The Hornings assert the district court erred in interpreting the applicable statute of repose as beginning to run when installation of the furnace was completed and granting summary judgment for Penrose. We review district court interpretations of statutory provisions and summary judgment orders *de novo*. *City of Cheyenne v. Bd. of County Comm'rs of Laramie Co.*, 2012 WY 156, ¶ 4, 290 P.3d 1057, 1058 (Wyo. 2012).

## DISCUSSION

[¶11] The statute of repose at issue here provides in pertinent part as follows:

### § 1-3-110. "Substantial completion" defined.

As used in this act [§§ 1-3-110 through 1-3-113] "substantial completion" means the degree of completion at which the owner can utilize the improvement for the purpose for which it was intended.

## § 1-3-111. Improvements to real property; generally.

(a) Unless the parties to the contract agree otherwise, <u>no action to recover damages</u>, whether in tort, contract, indemnity or otherwise, <u>shall be brought more than ten (10) years after substantial completion of an improvement to real property</u>, against any person constructing, altering or repairing the improvement, manufacturing or furnishing materials incorporated in the improvement, or performing or furnishing services in the design, planning, surveying, supervision, observation or management of construction, or administration of construction contracts for:
    (i) Any deficiency in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or observation or management of construction;
    (ii) Injury to any property arising out of any deficiency listed in paragraph (i) of this subsection; or
    (iii) Injury to the person or wrongful death arising out of any deficiency listed in paragraph (i) of this subsection.

(Emphasis added.)

[¶12]   The Hornings contend the "improvement to real property" at issue here is the condominium and the furnace was a component part of that improvement. They further contend the statute of repose began to run upon substantial completion of the improvement, i.e. the condominium. Penrose argues, and the district court found, that the improvement to real property was the HVAC system; it was substantially completed in 2001; therefore, the statute of repose began to run in 2001 and the Hornings' complaint filed in 2012 was untimely.

[¶13]   To interpret the above provisions, we apply our usual rules of statutory interpretation.

[Our] paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if

3

the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.

*Barlow Ranch, Ltd. Partnership v. Greencore Pipeline Co. LLC,* 2013 WY 34, ¶ 18, 301 P.3d 75, 83 (Wyo. 2013), citing *Michael's Constr., Inc. v. Am. Nat'l Bank*, 2012 WY 76, ¶ 12, 278 P.3d 701, 705 (Wyo. 2012). When the language is clear, we give effect to the ordinary and obvious meaning of the words employed by the legislature. *Barlow Ranch*, ¶ 18, 301 P.3d at 83. In ascertaining the meaning of a statutory provision, all statutes relating to the same subject or having the same general purpose must be considered in pari materia and construed in harmony. *Id*. We do not apply our rules of statutory construction unless a statute is ambiguous. *Id*., citing *Vogel v. Onyx Acceptance Corp.*, 2011 WY 163, ¶ 24, 267 P.3d 1057, 1064 (Wyo. 2011).

[¶14] Section 1-3-111 bars an action arising from an improvement to real property if it is brought more than ten years after substantial completion of the improvement. This Court has previously applied the following definitions of "improvement" in the context of § 1-3-111:

> (iii) "Improve or improvement" means:
> (A) Demolition, erection, alteration or repair of any property for its permanent benefit;
> (B) Any work performed or material furnished for the permanent change of any real property; and
> (C) Materials manufactured pursuant to contract.
>
> WYO. STAT. § 29-1-201(a)(iii) (1997). …
>
> **Improvement.** A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset.
>
> BLACK'S LAW DICTIONARY 757 (6th ed.1990).

4

*Covington v. W.R. Grace-Conn.*, Inc., 952 P.2d 1105, 1107 (Wyo. 1998).

[¶15] Construction of a condominium constitutes work performed for the permanent change of real property and a valuable addition to real property. The Hornings are correct that the condominium is an improvement to real property within the meaning of § 1-3-111. Furnishing and installing an HVAC system constitutes work performed and material furnished for the permanent change of real property and amounts to more than a repair or replacement. Penrose's assertion that the HVAC is an improvement to property to which the statute of repose applies is, therefore, also correct. Giving the word "improvement" its plain and ordinary meaning, both the condominium and the HVAC system constitute improvements to real property within the meaning of § 1-3-111.[1]

[¶16] The question is which improvement—the condominium or the HVAC system–triggered the statutory ten year period. Section 1-3-111 provides that the ten year period begins to run upon substantial completion of the improvement. Section 1-3-110 defines "substantial completion" as "the degree of completion at which the owner can utilize the improvement for the purpose for which it was intended." Here, neither the condominium nor the HVAC system could be utilized for the purpose for which they were intended until the home could be occupied. It is undisputed that the home could not be occupied until the city completed its final inspections and issued a certificate of occupancy. That occurred in August 2003. Pursuant to the plain language of §§ 1-3-110 and 1-3-111, that is the date the statute of repose began to run.

[¶17] Penrose argues the triggering date for the statute of repose should not depend on when a certificate of occupancy issues particularly where, as here, evidence was presented showing the condominium was substantially completed in early 2002 but the developer delayed paying the fee necessary to obtain the certificate of occupancy for eighteen months. Penrose contends the legislature intended the statute of repose to begin to run upon substantial completion, not when a developer or other party gets around to taking the requisite steps to obtain city approval.

[¶18] Penrose's argument has some appeal. It does seem that a party's exposure to liability for defective work should not be dependent on the whims of others involved in an improvement to real property. However, our task is to interpret the statute as written. We are not at liberty to rewrite a statute under the guise of statutory interpretation or impose a meaning beyond its unambiguous language. *Jones v. State*, 2001 WY 28, ¶ 13, 18 P.3d 1189, 1194 (Wyo. 2001). In § 1-3-110, the legislature has clearly and

---

[1] Our conclusion that the HVAC system is an improvement to real property finds support in cases decided by other courts. *See Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn. 1977); *Fennell v. Nesbitt, Inc.*, 398 N.W.2d 481 (Mich. 1986); *Cyrus v. Henes*, 623 N.E.2d 1256 (Ohio App. 1993).

unambiguously defined substantial completion as the degree of completion at which the owner can utilize the improvement for the purpose for which it was intended. Here, neither the condominium nor the HVAC system could be utilized for its intended purpose until the home could be occupied. Applying the plain language used by the legislature, the statute of repose began to run when the certificate of occupancy issued in August 2003.

[¶19] Penrose asserts this result is contrary to the policy underlying the enactment of the statute of repose. Penrose argues that the legislature intended the statute to protect contractors and subcontractors from claims arising years after their involvement in an improvement to real property ended. Penrose is correct that the legislature's intent in enacting § 1-3-111 was to limit the time in which an action may be brought against those involved in making improvements to real property. *Worden v. Village Homes*, 821 P.2d 1291, 1294 (Wyo. 1991), citing 1981 Wyo. Sess. Laws ch. 166 § 2. The legislature recognized the public interest in allocating

> the burden of insuring against injury, property loss and wrongful death after ten (10) years to the owner or possessor of the improvement to real property, who routinely carries insurance against such risks and is in the position to so most efficiently, upon whom already rests the duty to maintain and inspect the property and in whom sufficient control over the property is vested to carry out that duty.

*Id*. The legislature also recognized "it is not in the public interest to impose liability in perpetuity upon those providing goods and services necessary to the improvement of real property." *Id.*

[¶20] In balancing the competing interests involved, the legislature determined that the ten year period for shifting the burden would begin to run when the improvement was completed to the degree that the owner could utilize the improvement. Here, the improvements could not be utilized until the home could be occupied. Had the legislature intended the ten year statute of repose to begin to run on the date an individual contractor or subcontractor completed its work on a project it could easily have said so. It did not and we must interpret the statute as written. *Stutzman v. Office of Wyoming State Engineer*, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo. 2006). Interpreting the statute to mean that it commences to run when a particular contractor has substantially completed his portion of a project, as Penrose suggests, rather than when the owner can utilize the improvement, would mean inserting language into the statute that the legislature omitted and render meaningless the language the legislature used.

[¶21] In reaching the result it did, the district court relied on *Gordon v. W. Steel Co.*, 950 S.W.2d 743 (Tex. App. 1997). In that case, the owner of a condominium unit filed a

complaint against two subcontractors who worked on the project. On the subcontractors' motions, the district court granted summary judgment and dismissed the claims against them finding that the action was not brought within ten years as required by the Texas statute. The appellate court affirmed.

[¶22] Significantly, although the statute at issue in *Gordon* provided that an action must be brought within ten years of substantial completion of an improvement to real property the Texas legislature did not define "substantial completion." The owner argued the statute began to run when the condominium was finished. The subcontractors argued it began to run when they completed their work on the condominium. Looking at the legislative history, the court held the statute commenced to run when the subcontractors completed their work on the property, not when the entire project was finished. The court in *Gordon* was not asked to interpret a statute expressly defining "substantial completion" to mean "the degree of completion at which the owner can utilize the improvement for the purpose for which it was intended." *Gordon*, therefore, is not persuasive authority for interpreting the Wyoming provision.

[¶23] The cases Penrose cites are similarly distinguishable. The statute at issue in *Daidone v. Buterick Bulkheading*, 924 A.2d 1193, 1198 (N.J. 2007) and *Hopkins v. Fox & Lazo Realtors*, 576 A.2d 921 (N.J. 1990) stated:

> No action, whether in contract, in tort, or otherwise, to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, <u>more than 10 years after the performance or furnishing of such services and construction.</u>

N.J.S.A. 2A:14-1.1(a). (Emphasis added.) The New Jersey court interpreted this provision as follows:

> A cause of action for construction or design defects ceases to exist ten years and one day after the designer or contractor has performed or furnished his or her design or construction services. Thus, if a designer's or contractor's services continue up to and including the date the certificate of occupancy is

issued for the improvements made, then the start date for Statute of Repose purposes is the date of the certificate of occupancy. If, however, the design or construction services are completed before a certificate of occupancy is issued and the designer or contractor has no further functions to perform in respect of that construction project, then the start date for Statute of Repose purposes is the date on which the designer or contractor has completed his or her portion of the work.

[¶24] The California statute interpreted by the court in *Industrial Risk Insurers v. Rust Engr. Co.,* 232 Cal. App. 3d 1038, 283 Cal Rptr. 873 (Cal. App. 1991) provided in relevant part:

> (a)   No action may be brought to recover damages from any person . . . who develops real property or furnishes the design, specifications, . . . or construction of an improvement to   real property more than 10 years after the substantial completion of the development or improvement . . . .
>
> . . . .
> (g)   The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs:
>> (1) The date of final inspection by the applicable public agency.
>> (2) The date of recordation of a valid notice of completion.
>> (3) The date of use or occupation of the improvement.
>> (4) One year after termination or cessation of work on the improvement.
>> The date of substantial completion shall relate specifically to the performance or furnishing design, specifications . . . or construction services by each profession or trade rendering services to the improvement.

Cal. Code Civ. Proc. § 337.15 (2014).

[¶25]  Finally, the statute interpreted in *Fueston v. Burns & McDonnell Engr. Co., Inc.,* 877 S.W.2d 631 (Mo. Ct. App. 1994) provided in pertinent part:

> 1. Any action to recover damages for economic loss, personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real

8

property . . . shall be commenced with ten years of the dates on which such improvement is completed.

. . . .

6. Notwithstanding subsection 1 of the section, if an occupancy permit is issued, the ten-year period shall commence on the date the occupancy permit is issued.

§ 516.097 R.S. Mo. (2014).

[¶26] None of the statutes interpreted in the above cases define the term "substantial completion" as the Wyoming statute defines it. Our task is to interpret the language our legislature utilized. Giving the words their plain and ordinary meaning, we conclude § 1-3-111 begins to run on the date the owner can utilize the improvement for which it was intended which, under the facts of this case, occurred in August of 2003. If our interpretation of the plain language is not what the legislature intended, it is free to amend the statute.

[¶27] Reversed.

**FOX**, **Justice**, dissenting, in which, **DAVIS**, **Justice**, joins.

[¶28] I respectfully dissent. As the majority recognizes, the HVAC is an "improvement" to real property under Wyo. Stat. Ann. § 1-3-111 (LexisNexis 2013). I believe a careful reading of the statute and the policy behind it require us to find that the triggering event to begin the period of repose is substantial completion of the HVAC improvement, not the date of substantial completion of a different improvement, the condominium. Further, there seems to be no basis for the conclusion that substantial completion of the condominium did not occur until the city issued a certificate of occupancy, at some date unrelated to the actual completion of the condominium.

[¶29] A statute of repose differs from a statute of limitations because it has no relation to a date of injury, but rather it begins "upon the occurrence of an event, regardless of when the injury occurs[.]" *Worden v. Village Homes*, 821 P.2d 1291, 1295 (Wyo. 1991). The purpose of a statute of repose, and Wyo. Stat. Ann. § 1-3-111 in particular, is to further "the legitimate state objective of protecting the economic and social stability of the state." *Worden*, 821 P.2d at 1294. The legislature set forth its policy determination of the public interest when it enacted § 1-3-111, explaining the allocation of risk to insure against injury to the homeowner, and the interest of protecting "those providing goods and services necessary to the improvement of real property" from liability in perpetuity. 1981 Wyo. Sess. Laws ch. 166 § 2(a)(iii) and (iv). The legislature recognized that one reason for providing such protection to service providers is that once they have completed their particular improvement, they "lack control over other forces, uses and intervening causes[.]" *Id.* at (a)(i). An interpretation that extends the trigger for the statute of repose violates its policy by favoring the injured party rather than the service provider.

[¶30] On August 24, 2001, Penrose had installed the HVAC system to "the degree of completion at which the owner can utilize the improvement for the purpose it was intended." Wyo. Stat. Ann. § 1-3-110 (LexisNexis 2013). It had no control over other forces, and no control over when the condominium would be substantially completed or when a certificate of occupancy would be issued. If, as the majority concedes, the HVAC system is an "improvement" under the statute, it is the date of the substantial completion of that improvement that should trigger the statute of repose period, not some other date over which Penrose had no control.

[¶31] Even if we look at the date of substantial completion of the condominium, the facts support a finding that the statute of repose had run by the time the Complaint was filed. The condominium was completed in early 2002. Thus, the Complaint, filed November 13, 2012, was filed more than ten years after the period had begun to run. The condominium had reached "the degree of completion at which the owner can utilize the improvement for the purpose for which it was intended." Wyo. Stat. Ann. § 1-3-110. The legislature made no reference in that statute or in § 1-3-111 to a certificate of occupancy. The legislature "specifically focuse[d] on the extent to which a structure has

10

been built as the measuring stick for whether the owner may use or occupy the structure for its intended purpose, not on the owner's legal right to use or occupy that structure for its intended purpose." *Rosso v. Hallmark Homes of Minneapolis, Inc.*, 843 N.W.2d 798, 803 (Minn. Ct. App. 2014); *see also, Ocean Winds Corp. of Johns Island v. Lane*, 556 S.E.2d 377, 421 (S.C. 2001) ("The purpose of the statute of repose is served where the period prescribed therein begins to run on the date installation and incorporation into a larger improvement is complete, rather than the date on which certificates of occupancy are issued.").

[¶32]   To find that the "improvement" is not "substantially completed" until issuance of a certificate of occupancy is to put words in the statute that are not there, contrary to our rules of statutory interpretation. *In re Adoption of Voss*, 550 P.2d 481, 484-85 (Wyo. 1976) ("[A] court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes[.]").   Further, there is nothing in the definition of "improvement" that we adopted in *Covington v. W.R. Grace-Conn., Inc.*, 952 P.2d 1105, 1107 (Wyo. 1998) that suggests the physical work contemplated would also include an administrative function such as the issuance of a certificate of occupancy.

[¶33]   For these reasons, I would affirm the district court's grant of summary judgment.