# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 105

APRIL TERM, A.D. 2015

August 14, 2015

ELECTRICAL WHOLESALE SUPPLY
CO., INC., an Idaho Corporation,

Petitioner,

v.

ALANE FRASER, an Individual; and M.J.
BISHOP CONCRETE &
CONSTRUCTION, INC., a Wyoming
Corporation,

Respondents.

S-14-0260

*Original Proceeding*
*Petition for Writ of Review*
*From the District Court of Teton County*
The Honorable Timothy C. Day, Judge

*Representing Petitioner:*
> Mitchell H. Edwards and Julie M. Wickett of Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Edwards.

*Representing Respondent Alane Fraser:*
> Bret F. King of King & King, LLC, Jackson, Wyoming. No appearance.

*Representing Respondent M.J. Bishop Concrete & Construction, Inc.:*
> William R. Fix, Jackson, Wyoming.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\* Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015), she was reassigned to act on this matter on August 4, 2015.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]    Electrical Wholesale Supply Co. (EWS) filed this action in circuit court, seeking payment for electrical materials it supplied to a commercial building remodel in Jackson, Wyoming.  The circuit court denied EWS's claims, and we granted a writ of review pursuant to W.R.A.P. 13.01, *et seq.* after the district court affirmed the circuit court's rulings.  EWS asserts the circuit court erred by declaring its lien against Alane Fraser's[1] property invalid for failing to follow the statutory notice requirements.  EWS also challenges the circuit court's denial of its unjust enrichment claim against Ms. Fraser and the general contractor, M.J. Bishop Concrete & Construction, Inc. (Bishop Construction).

[¶2]    We conclude the circuit court applied the wrong statute to the lien notice issue and erred by granting summary judgment in favor of Ms. Fraser on the lien claim.  However, we agree with the circuit court that EWS did not prove its unjust enrichment claim.  We, therefore, affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## ISSUES

[¶3]    The dispositive issues in this case are:

1.      Whether the circuit court applied the correct lien notification statute under the circumstances of this case.

2.   Whether EWS provided timely notice of its filed lien to the property owner.

3.   Whether EWS proved the elements of unjust enrichment.

## FACTS

[¶4]    Ms. Fraser hired Bishop Construction to remodel her commercial property in Jackson, Wyoming.  Bishop Construction subcontracted with Jackson Hole Electric, Inc., also referred to as JHE 2, Inc., (hereinafter JHE) to perform electrical work on the project.  Dusty Jones, vice-president of JHE, opened a general account with EWS, an electrical materials supplier, in July 2010.  He also opened a job account for the Fraser project, called the Rafter J Café, in November 2010.  JHE's application for the job account listed and provided addresses for Ms. Fraser as the owner, Bishop Construction as the general contractor, and JHE as the electrical contractor.

---

[1] Alane Fraser is named as a defendant/respondent in this case. She did not, however, file a brief on appeal and the record indicates that, during the pendency of this litigation, she sold the property.  No issue is raised regarding the proper parties to this appeal, so while we note this development, we will not further address it.

[¶5]   On November 30, 2010, EWS notified Ms. Fraser and Bishop Construction that it was providing materials for the project.   In the notice, EWS provided its contact information, including the address and telephone number for making payments.   The notice also stated:

> 6)   This document hereby constitutes notice of Electrical Wholesale Supply Co., Inc.'s right to claim a lien against the building or improvements upon the real property for materials furnished.
>
> In the even[t] that this job constitutes a "single family dwelling unit" as also described by the Wyoming statutes,[2] the following additional notice is also given:
>
> NOTICE TO OWNER
>
> FAILURE OF THIS PRIME CONTRACTOR OR SUBCONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIALS OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO W.S. 29-2-101 THROUGH 29-2-110.   TO AVOID THIS RESULT, WHEN PAYING FOR LABOR AND MATERIALS YOU MAY ASK THIS PRIME CONTRACTOR OR SUBCONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIALS OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT.   FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOU PAYING FOR LABOR AND MATERIALS TWICE.

[¶6]   EWS sent the notice to Ms. Fraser and Bishop Construction by certified mail, return receipt requested, as then required by Wyo. Stat. Ann. §§ 29-2-110 and 29-2-111 (LexisNexis 2010).  Although the mailing addresses used by EWS were incorrect in some respects, the notices were delivered by the post office and signed for by representatives of

---

[2] By its plain language, the "notice to owner" applied to jobs involving "single family dwelling units." That language was presumably intended to comply with Wyo. Stat. Ann. § 29-2-110 (LexisNexis 2010). The Rafter J Café project was a commercial building, not a single family dwelling unit.  This distinction was not recognized by the circuit court or any of the parties.  In fact, Ms. Fraser testified that she believed the provision applied to her, as owner of the Rafter J Café project.  Given everyone involved proceeded as if the provision applied, we will not consider the legal effect of the limitation contained in the notice language.

2

the respective addressees. Ms. Fraser and Mr. Bishop specifically acknowledged receiving the notices.

[¶7]    EWS supplied materials to JHE for use on the Rafter J Café project and regularly submitted invoices to JHE for payment. JHE paid the invoices for the first several months of the project, but in June 2011 began falling behind in its payments. The unpaid principal amount was $18,495.94.

[¶8]    In the meantime, JHE submitted bills of over $92,000 to Bishop Construction for electrical work and materials on the job, and Bishop Construction paid JHE in full. Bishop Construction then billed Ms. Fraser over $1,000,000 for work on the project (including the electrical work), which she paid in full. Neither Bishop Construction nor Ms. Fraser requested lien waivers from EWS or JHE when they made their payments. JHE consolidated its revenue from all of its jobs and used the money to pay outstanding bills. With regard to its EWS accounts, JHE tended to pay those that had been in arrears the longest.

[¶9]    In accordance with its policy, EWS suspended JHE's Rafter J Café account in September 2011 because it was more than sixty days past due. The café opened on November 11, 2011, and a few days later, November 16, 2011, EWS's legal counsel mailed a letter to Ms. Fraser, with copies to Bishop Construction and JHE, giving notice of its intent to file a lien against her property if the outstanding balance was not paid. The letter was certified and Ms. Fraser's teenaged son signed for it on December 6, 2011. Although Ms. Fraser could not recall when she first saw the letter, she did review it at some point and learned that EWS had not been paid. Mike Bishop of Bishop Construction did not remember receiving the letter, but became aware of it when he met with Ms. Fraser and Mr. Jones in late November or early December 2011 to discuss the situation. Ms. Fraser offered to pay EWS $15,000 to resolve the issue, but EWS rejected the offer. Mr. Jones assured her and Mr. Bishop that he would make arrangements to pay the bill, but he did not. On December 22, 2011, EWS recorded a lien against Ms. Fraser's property. It sent notice of its lien to Ms. Fraser on December 29, 2011.

[¶10]  On May 31, 2012, EWS filed an action in the circuit court in Teton County, naming Ms. Fraser, Bishop Construction, JHE, and Mr. Jones as defendants.[3] The complaint included causes of action for foreclosure of a construction lien, breach of contract, unjust enrichment, and third party beneficiary. Mr. Jones and JHE failed to respond to the complaint and default was entered against them; however, JHE is defunct and EWS was unable to collect its judgment against either the company or Mr. Jones. EWS's third party beneficiary claim was dismissed with its consent.

---

[3] Pursuant to Wyo. Stat. Ann. § 5-9-128(a)(i) and (vi) (LexisNexis 2013), the circuit courts have exclusive jurisdiction over civil actions seeking $50,000 or less and to foreclose statutory liens of the same value.

3

[¶11] Ms. Fraser filed a motion for summary judgment on EWS's lien claim. She argued the lien was not effective because EWS had not complied with the statute which required it to send her notice of the lien within five days after it was filed. The circuit court held a hearing on the summary judgment motion and concluded the statute required mailing of a notice of the lien within five calendar days after recording and EWS had not complied with its obligation. The circuit court, therefore, granted summary judgment in favor of Ms. Fraser, declaring the lien invalid. It subsequently denied EWS's motion for reconsideration of its summary judgment decision. The circuit court held a bench trial on EWS's unjust enrichment claim and entered judgment in favor of Ms. Fraser and Bishop Construction, concluding they did not have notice that EWS expected them to pay for the materials.

[¶12] EWS appealed to the district court, which affirmed the circuit court decisions. EWS then filed a petition for writ of review with the Wyoming Supreme Court, and we granted the petition.[4]

## STANDARDS OF REVIEW

[¶13] Two orders are at issue in this case and each requires application of a different standard of review. First, the circuit court granted summary judgment in favor of Ms. Fraser, declaring EWS's lien against her property invalid. Summary judgments are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A summary judgment is subject to *de novo* review, meaning this Court reviews the same materials and applies the same standards as the lower court. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Baker v. Speaks,* 2014 WY 117, ¶ 9, 334 P.3d 1215, 1219 (Wyo. 2014), quoting *Hasvold v. Park County School Dist. No. 6,* 2002 WY 65, ¶ 11, 45 P.3d 645, 637-38 (Wyo. 2002) (other citations omitted).

---

[4] Pursuant to W.R.A.P. 13.01 and Wyo. Stat. Ann. § 5-2-119, a decision of a court of limited jurisdiction is appealed in the first instance to the district court. The district court's decision may be appealed to the Wyoming Supreme Court only when it grants a petition for writ of review or certiorari agreeing to hear the appeal.

[¶14]   The circuit court conducted a bench trial on EWS's unjust enrichment claim.   In general, we apply the following standard when reviewing a district court's decision after a bench trial:

> "The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
>
> With regard to the trial court's findings of fact,
>
> > "we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law."
>
> The district court's conclusions of law, however, are subject to our *de novo* standard of review.

*Morris v. CMS Oil & Gas Co.,* 2010 WY 37, ¶ 12, 227 P.3d 325, 330 (Wyo. 2010), quoting *Lieberman v. Mossbrook,* 2009 WY 65, ¶ 40, 208 P.3d 1296, 1308 (Wyo. 2009) (citations omitted).

## DISCUSSION

### A.   Which statute governed notification to the property owner of the lien filing?

[¶15]   Under Wyo. Stat. Ann. § 29-2-101 (LexisNexis 2010), "every person performing any work on or furnishing any materials or plans for any building or any improvement upon land shall have for his work done or plans or materials furnished a lien upon the

building or improvements."[5] Under the statutory lien provisions, a claimant is required to comply with certain notice requirements. The lien in this case was filed in the county clerk's office on December 22, 2011, and EWS's counsel mailed notice of the lien to Ms. Fraser on December 29, 2011.

[¶16] Ms. Fraser argued that EWS's lien was invalid because it did not send notice to her within five calendar days after the lien was filed in accordance with Wyo. Stat. Ann. § 29-1-312(c) (LexisNexis 2012):

> (c) Notice shall be sent by the lien claimant to the last record owner or his agent in the case of a real property lien within five (5) days after the lien statement is filed.[6]

[¶17] EWS claimed W.R.C.P. 6(a) applied to make its notification timely. Rule 6(a) provides:

> (a) *Computation*. – In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statutes, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. **When the period of time prescribed or allowed is**

---

[5] Wyo. Stat. Ann. § 29-2-101 (LexisNexis 2014) continues to provide the right to a lien, although it has been revised.

[6] The legislature has since amended § 29-1-312(c) to require that notice of the lien be sent to the property owner within 30 days after filing and to specifically state that failure to send the notice will not affect the validity of the lien:

> (c) Notice shall be sent by the lien claimant to the last record owner or his agent in the case of a real property lien within thirty (30) days after the lien statement is filed. The notice shall be in substantially the same format and contain the same information as the form of notice specified in W.S. 29-10-103. The notice forms shall be made available and may be obtained at the county clerk's office of each county. Failure to send the notice required under this subsection shall not affect the validity of the lien.

Section 29-1-312(c) (LexisNexis 2014).

> **less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule, "legal holiday" includes any day officially recognized as a legal holiday in this state by designation of the legislature or appointment as a holiday by the governor.**

(Emphasis added).

[¶18] In 2011, Christmas was on Sunday, so Monday, December 26, 2011, was the recognized legal holiday. Under Rule 6(a), if the holiday and the weekend days are excluded from the calculation, December 29, 2011, was the fourth day after filing and a notice sent that day would have been timely. The circuit court rejected EWS's argument about application of Rule 6(a) to the calculation of time under § 29-1-312(c).

[¶19] On appeal to the district court, EWS argued, in part, that § 29-1-312 did not apply to its lien filing and insisted that an earlier version of the statute, Wyo. Stat. Ann. § 29-1-301(c) (LexisNexis 2009), applied instead. That statute included the following notice provision:

> "(c) Notice shall be given to the last known owner in the case of a real estate lien by certified mail and made by the lien claimant promptly after the lien statement is filed."

Section 29-1-301(c). EWS claimed it sent notice of its lien "promptly" as required by the statute.

[¶20] Section 29-1-312 went into effect July 1, 2011; however, the session law stated:

> The provisions of this act shall apply to all projects commenced on or after July 1, 2011. **Any projects commenced prior to July 1, 2011, shall be governed by the lien procedures in title 29 that existed prior to July 1, 2011**.

2010 Wyo. Sess. Laws Ch. 92, § 4, p. 425 (emphasis added). Given the Rafter J Café project commenced in late 2010, it is clear the former notice statute, § 29-1-301(c), applied to this case. Nevertheless, the district court refused to apply the earlier version of the statute because EWS had not specifically presented the argument to the circuit court.

[¶21] In general,

"issues raised for the first time on appeal . . . will not be considered by this court unless they are jurisdictional or issues of such a fundamental nature that they must be considered." *Byrd v. Mahaffey,* 2003 WY 137, ¶ 10, 78 P.3d 671, 674 (Wyo.2003).

*Gjertsen v. Haar,* 2015 WY 56, ¶ 15, 347 P.3d 1117, 1123 (Wyo. 2015). EWS represents that it was not aware of the provision making the revised statutory lien act applicable only to projects commenced on or after July 1, 2011, because that part of the law was not included in the printed version of the statute. We have confirmed that the printed versions of the 2010 supplement and the 2011 edition of the Wyoming Statutes did not include 2010 Wyo. Sess. Laws, Ch. 92, §4, p. 425.[7] Consequently, anyone using the printed versions of the revised statute was missing critical information about its effectiveness.

[¶22] 2010 Wyo. Sess. Laws, Ch. 92, § 4, p. 425 is, obviously, part of the statute. We interpret statutes *de novo. Horning v. Penrose Plumbing & Heating, Inc.,* 2014 WY 133, ¶ 10, 336 P.3d 151, 153 (Wyo. 2014). Our usual rules of statutory interpretation provide:

> [The] paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.

*Barlow Ranch, Ltd. Partnership v. Greencore Pipeline Co. LLC,* 2013 WY 34, ¶ 18, 301 P.3d 75, 83 (Wyo. 2013), citing *Michael's Constr., Inc. v. Am. Nat'l Bank,* 2012 WY 76, ¶ 12, 278 P.3d 701, 705 (Wyo. 2012)*.* "When the language is clear, we give effect to the ordinary and obvious meaning of the words employed by the legislature." *Horning,* ¶ 13, 336 P.3d at 154. We apply our rules of statutory construction only when a statute is ambiguous. *Id.*

[¶23] The Wyoming Legislature was careful to include, in the enacted legislation, the provision limiting the applicability of the revised statute to projects commenced on or after July 1, 2011. The legislature's clear intent was for § 29-1-301 to apply to projects under construction prior to the effective date of § 29-1-312. In accordance with the

---

[7] Interestingly, the on-line versions of the 2010 supplement and the 2011 edition do contain Laws 2010, ch. 92, § 4.

principle that courts are charged with enforcing the legislature's actual intent, enrolled bills govern over incorrect or incomplete printed versions. *See* 73 Am. Jur. 2d *Statutes* § 39 (2015); 82 C.J.S. *Statutes* § 78 (2015).

[¶24] Application of the correct law to the Rafter J Café project implicates a fundamental matter that warrants consideration of EWS's argument. Furthermore, the circuit court actually discussed § 29-1-301(c) in its detailed decision on EWS's motion for reconsideration of its summary judgment, although it did not recognize the provision limiting the effectiveness of § 29-1-312. We will, therefore, apply the correct rule of law, as set out in the former statute, to determine the timeliness of EWS's lien notification.

### B. Did EWS comply with the notification requirement of § 29-1-301(c)?

[¶25] As we stated above, § 29-1-301(c) required the lien claimant to give notice to the property owner "by certified mail . . . promptly after the lien statement is filed." Although the circuit court did not actually apply the earlier statute to EWS's lien, it stated that "[a]rguably, the plaintiff 'promptly' mailed the lien notice to the defendant."

[¶26] "Promptly" is not an exact term. The plain meaning of "prompt" is "at once," "without delay," or "quick to act as occasion demands." *Webster's Third New Int'l Dictionary* 1816 (2002). As the definition recognizes, what is "prompt" depends upon the situation. The Teton County Clerk recorded EWS's lien on December 22, 2011, and EWS's counsel, who practiced in Laramie, Wyoming, sent certified notice to Ms. Fraser that a lien had been recorded against her property on December 29, 2011. The week that passed between the date of filing and the date notice was sent included a weekend and Monday, December 26, 2011, a legal holiday, which obviously affected EWS's counsel's efforts to learn about the lien recording from the county clerk's office and to send the notice by certified mail. Under these circumstances, EWS promptly notified Ms. Fraser of the lien by certified mail. The circuit court erred by declaring the lien invalid and the district court erred by affirming the circuit court's decision.

### C. Did the circuit court properly conclude that EWS was not entitled to a judgment on the theory of unjust enrichment?

[¶27] In addition to its lien claim, EWS presented a cause of action for unjust enrichment against the defendants.

> Unjust enrichment (or *quantum meruit*) is an equitable remedy which implies a contract so that one party may recover damages from another. One seeking damages based on unjust enrichment must prove four elements:
>
> (1) Valuable services were rendered, or materials furnished,

9

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and,

(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Bowles v. Sunrise Home Center, Inc.,* 847 P.2d 1002, 1004 (Wyo. 1993) (citations omitted).

[¶28] Bishop Construction moved for summary judgment on EWS's unjust enrichment claim, asserting that as a matter of law EWS could not satisfy the fourth element of unjust enrichment because it did not give Bishop Construction and Ms. Fraser notice that it would look to them for payment. The circuit court denied Bishop Construction's motion, finding there were genuine issues of material fact precluding summary judgment. The circuit court then held a bench trial on EWS's unjust enrichment claim. After the trial, it issued findings of fact, conclusions of law and an order denying EWS's unjust enrichment claim because it had failed to prove the fourth element of the cause of action.

[¶29] As we stated in the standard of review section, above, a district court's factual findings after a bench trial are subject to the clearly erroneous standard of review. In addition, given unjust enrichment is an equitable remedy, the trial court had considerable discretion in ruling on the claim. We will not interfere with the lower court's decision unless an abuse of discretion is demonstrated. *Windsor Energy Group, LLC v. Noble Energy, Inc.,* 2014 WY 96, ¶ 23, 330 P.3d 285, 291-92 (Wyo. 2014) (discussing standard of review applicable to the district court's decision after a bench trial on a claim based upon the equitable doctrine of laches).

[¶30] The circuit court and, to some extent, the parties focused on the notice portion of the fourth element of unjust enrichment at trial, i.e., whether EWS reasonably notified Bishop Construction and Ms. Fraser that EWS expected to be paid by them. The circuit court ruled that neither Bishop Construction nor Ms. Fraser received adequate notice from EWS that it was looking to them for payment for the electrical supplies purchased by JHE on its account. The circuit court relied upon *Bowles,* 847 P.2d 1002, in arriving at its decision.

[¶31] Bowles was the owner of a construction project, Homestead was the original general contractor, and Sunrise supplied materials for the job on an account opened by

10

Homestead. Homestead did not complete the job in a timely manner, so Bowles hired a second contractor, Thompson, to finish the project. Homestead, Bowles and Thompson all charged items to the job account with Sunrise. The account was not paid in full and Sunrise filed a lien against Bowles' property and then filed an action against Homestead, Bowles and Thompson. The action included counts for foreclosure of the lien and unjust enrichment. *Bowles,* 847 P.2d at 1003-04.

[¶32] The lien foreclosure claim was dismissed because "Sunrise failed to follow the strict statutory requirements of Wyoming's mechanic's lien laws." *Id.* at 1004. The district court held a bench trial on Sunrise's unjust enrichment claim, but Homestead declared bankruptcy so the only remaining defendants were Bowles and Thompson. The district court entered judgment in favor of Sunrise. On appeal, this Court reversed in part, concluding that Sunrise had not given sufficient notice to Bowles and Thompson that it expected them to pay for the materials purchased by Homestead for the project. However, we affirmed the judgment as it pertained to the items charged by each of them, concluding they had sufficient notice that they were expected to pay for those materials. We explained:

> Because Homestead: (1) alone opened the account, (2) was the sole signatory on the account application, (3) was the only entity billed by Sunrise on the account, and (4) was bound contractually to supply material and construct Bowles' office building, we find that Bowles and Thompson were not reasonably notified that Sunrise expected to be paid by them on this account. However, we limit this finding to the amounts specifically charged by Homestead and its employees because when Bowles and Thompson charged supplies themselves they had reasonable notice that Sunrise expected to be paid for those charges.

*Id.* at 1005.

Applying *Bowles* to the circumstances of this case, the circuit court stated:

> 48. Based upon *Bowles,* the court concludes that Fraser and Bishop Construction were not reasonably notified that the plaintiff expected to be paid by them for electrical supplies purchased by Jackson Hole Electric on its job account, because (1) Jackson Hole Electric, through its owner, Dusty Jones, alone opened the account, (2) Jones was the sole signatory on the account application, (3) Jones' entity, Jackson Hole Electric, was the only entity billed by the plaintiff on the account, and (4) Jones and Jackson Hole

11

Electric were bound contractually to pay the plaintiff for the electrical supplies provided for the Rafter J project. Fraser and Bishop Construction therefore are not liable to the plaintiff on the theory of unjust enrichment.

The circuit court specifically found that the pre-lien notice sent by EWS on November 30, 2010,

> did place Fraser and Bishop Construction on notice that the plaintiff intended to get paid for providing electrical supplies for the Rafter J project; but it placed Fraser and Bishop Construction on notice that the plaintiff intended to get paid by Jackson Hole Electric, not by Fraser and Bishop Construction.

(footnote omitted).

[¶33] We have concerns about the circuit court's analysis of the notice provided by EWS when it began providing materials for the job in late 2010. The notice, quoted in Paragraph 5 above, clearly placed the owner and general contractor on notice that, if JHE did not pay for the materials, they were at risk of having to pay for them. It warned them that they should obtain lien waivers prior to paying JHE in order to prevent having a lien placed on the property. The *Bowles* opinion does not describe the notice sent by Sunrise to the owner or second contractor, stating only that it failed to comply with the lien statutes. By contrast, we do know the contents of the lien notice in this case. It informed Ms. Fraser and Bishop Construction that EWS expected to be paid; EWS had the right to a lien on the property to secure payment for the electrical materials; and the owner was at risk of having to pay twice for the materials if lien waivers were not secured from the general contractor, the subcontractors and/or the materialmen.

[¶34] Although we have misgivings about the circuit court's rationale, we do not need to make a definitive ruling on the adequacy of EWS's notice for purposes of the unjust enrichment claim because the record does not demonstrate that either Bishop Construction or Ms. Fraser was unjustly enriched by the electrical materials supplied by EWS. The second part of the fourth element of unjust enrichment requires a showing that the party to be charged would be unjustly enriched if it were not required to pay.

> Element four is the heart of an unjust enrichment claim. The receipt of a benefit must be unjust as to the party to be charged. Unjust enrichment is an equitable remedy that is appropriate only when the party to be charged has received a benefit that in good conscience the party ought not retain without compensation to the party providing the benefit. "The words 'unjust enrichment' concisely state the necessary

12

elements of an equitable action to recover money, property, etc., which 'good conscience' demands should be set over to the appellee by appellants pursuant to an implied contract between them." *Landeis v. Nelson,* 808 P.2d 216, 218 (Wyo.1991). As stated at 66 Am.Jur.2d *Restitution and Implied Contracts* § 8 (2001):

> The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

*Boyce v. Freeman,* 2002 WY 20, ¶ 15, 39 P.3d 1062, 1065-66 (Wyo. 2002). *See also, Symons v. Heaton,* 2014 WY 4, ¶ 16, 316 P.3d 1171, 1176 (Wyo. 2014); *Redland v. Redland,* 2012 WY 148, ¶ 146, 288 P.3d 1173, 1205-06 (Wyo. 2012).

[¶35]   The evidence in this case clearly established that Bishop Construction paid JHE for all of the electrical services and materials billed on the Rafter J Café project. In turn, Ms. Fraser fully paid Bishop Construction for all of the labor and materials it billed on the project. JHE applied its business revenues as it saw fit and chose not to use the proceeds of the Rafter J Café project to pay off the EWS account. Given the general contractor and the owner paid all amounts due to JHE, it cannot be said that 'good conscience' demands they pay EWS for the materials JHE installed in the project. They were not unjustly enriched by the materials from EWS. The party who was unjustly enriched by EWS's materials was JHE because it received full payment and did not apply the funds to pay off the job account.

[¶36] In *Bowles,* we discussed a case with facts very similar to the case at bar, *Morrisville Lumber Co. v. Okcuoglu,* 148 Vt. 180, 531 A.2d 887 (1987). We described the facts and holding of the Vermont case as follows:

> The Okcuoglus had contracted with a builder to construct a vacation home. The builder opened two accounts, a general account and a job account, with a materials supplier (Morrisville) and then purchased supplies for the Okcuoglu

13

project. Problems arose between the Okcuoglus and the builder which resulted in termination of the builder before the home was complete. Okcuoglu paid the builder only two-thirds of the contract price but was forced to expend additional funds, beyond the contract price, to have the home completed. Unable to collect on the accounts from the builder, Morrisville sued the Okcuoglus based on unjust enrichment. *Morrisville,* 531 A.2d at 888. The Vermont Supreme Court declined to permit damages based upon unjust enrichment because the Okcuoglus paid for all the benefits it received; therefore, they were not unjustly enriched. *Morrisville,* 531 A.2d at 889.

*Bowles,* 847 P.2d at 1005. Like the Okcuoglus, Bishop Construction and Ms. Fraser paid for all of the benefits they received. Consequently, the circuit court did not abuse its discretion by ruling that EWS was not entitled to relief under the equitable doctrine of unjust enrichment.

[¶37] Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

14