# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 68

**APRIL TERM, A.D. 2024**

**June 19, 2024**

SUMMIT CONSTRUCTION,

Appellant
(Plaintiff),

v.                                                                      S-23-0244

JAY KOONTZ and JENNIE L. KENNETTE,

Appellees
(Defendants).

*Appeal from the District Court of Washakie County*
*The Honorable Bill Simpson, Judge*

*Representing Summit Construction:*
    Christopher J. King, APEX Legal, P.C., Worland, Wyoming.

*Representing Jay Koontz:*
    M. Jalie Meinecke, Meinecke & Sitz, LLC, Cody, Wyoming.

*Representing Jennie L. Kennette:*
    Thomas P. Keegan, Keegan & Krisjansons, P.C., Cody, Wyoming.

*Before FOX, C.J., and KAUTZ,\* BOOMGAARDEN, GRAY, and FENN, JJ.*

\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2023), he was reassigned to act on this matter on March 27, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]     Summit Construction (Summit) filed suit for breach of contract against Jay Koontz and Jennie L. Kennette or, in the alternative, unjust enrichment against Mr. Koontz. Summit's claims were based upon nonpayment for work performed on Mr. Koontz's home pursuant to an alleged oral agreement between the parties.  After a bench trial, the district court rejected both claims.  Relevant here, it determined Summit's breach of contract claim failed because the parties did not have an enforceable oral contract and Summit did not sufficiently prove its damages with respect to its unjust enrichment claim.  Summit appeals. We affirm.

## *ISSUES*

[¶2]     Summit presents two issues which we rephrase as:

> 1.  Did the district court clearly err by finding Summit did not have an enforceable oral contract with either Mr. Koontz or Ms. Kennette?
>
> 2.  Did the district court abuse its discretion by deciding Summit failed to sufficiently prove its damages with respect to its unjust enrichment claim?

## *FACTS*

[¶3]     In 2018, Mr. Koontz and his mother, Ms. Kennette, then in her eighties, discussed a plan for Ms. Kennette to move into Mr. Koontz's Worland, Wyoming, home.  To accommodate her move, they orally agreed Ms. Kennette would sell her home in Basin, Wyoming, to pay for an addition to Mr. Koontz's home consisting of a bedroom, a bathroom, and a three-car attached garage (collectively "addition").

[¶4]     Mr. Koontz and Ms. Kennette met with Erik Smith, the owner of Summit, to discuss the potential for Summit to build the addition.  Following this meeting, Mr. Smith provided a written bid for the addition totaling $161,460.  The bid was directed to Mr. Koontz and stated, "[t]his is everything to build . . . to a finished building" and "[t]his is not a bid for doing the inside of the old part of [the] house.  Only for the garage and Edition [sic] in back of house[.]"  It also stated, "[n]eed 60% of payment before start of job."  In October 2018, Ms. Kennette made a down payment of $72,000 to Summit.

[¶5]     Summit performed limited work on the addition in December 2018 with the bulk of the work beginning in February 2019.  Shortly after the work started, Summit discovered significant problems with the existing home's structure, electrical system, and plumbing. Mr. Smith testified he notified Mr. Koontz and Ms. Kennette of the problems and they

1

"both agreed that [work on the existing home] need[ed] to be done, take everything out, start over." Mr. Smith suggested they "just do [a] time and materials" arrangement wherein Mr. Koontz and Ms. Kennette would reimburse Summit for the building materials it purchased for the project and pay Summit an hourly rate for the labor expended on the project. According to Mr. Smith, Mr. Koontz and Ms. Kennette orally agreed to a time and materials contract but no written documentation reflects this agreement.

[¶6] Summit continued to work on the addition. It also performed extensive work on the existing home, including the removal of a carport to create a new front entry and a complete gutting of the kitchen and a bathroom. It constructed a vaulted ceiling in the living room, installed a new tankless water heater and an HVAC system, and removed interior walls replacing them with structural beams. It replaced floor joists and the sewer line. It redid the electrical and plumbing.

[¶7] Ms. Kennette paid Summit $40,000 in March 2019 and $47,000 in April 2019.[1] In May 2019, Summit claimed $89,813.12 remained outstanding. In early June, when no further payments were made, Summit ceased working on the project, took out a loan to pay its subcontractors, and began charging Mr. Koontz and Ms. Kennette interest on the amounts it claimed were outstanding. Ms. Kennette made an additional payment of $41,000 in January 2020, leaving a balance on the amount Summit claimed was due of $48,813.12. In total, Ms. Kennette paid Summit $200,000.

[¶8] When Summit left the project in June, the addition was not completed, and the original house was uninhabitable. Mr. Koontz's expert estimated it would cost over $250,000 to complete the work on the home and render it habitable.

[¶9] Summit sued Mr. Koontz and Ms. Kennette for breach of contract and Mr. Koontz for unjust enrichment. It claimed Mr. Koontz and Ms. Kennette owed it $56,443.81, which it calculated by adding interest to the outstanding balance of $48,813.12.[2] After a four-day

---

[1] As we will explain below, Summit submitted three invoices during the course of the project. Ms. Kennette testified she never received any of these invoices until after Summit ceased working on the project and claimed she made two payments in April 2019, only after Mr. Smith called her seeking money. She did not specifically designate her payments as applying to the addition and/or to the work on the existing home.

[2] Summit originally sued both Mr. Koontz and Ms. Kennette for breach of contract and unjust enrichment and sought $56,443.81 in damages. In its written closing argument following the bench trial, Summit apparently increased the amount of relief it was requesting to more than $122,000 and did not seek judgment against Ms. Kennette. Summit's written closing argument is not in the record, and the district court addressed Summit's breach of contract claim against Ms. Kennette. Summit maintains on appeal that the district court erred by finding it did not have an enforceable oral contract with either Mr. Koontz or Ms. Kennette. Mr. Koontz filed a counterclaim for breach of contract against Summit and crossclaims for breach of contract and conversion against Ms. Kennette. Ms. Kennette did not raise any counterclaims in her answer but after the bench trial, she successfully amended her pleadings to include claims for breach of contract and overpayment against Summit. The district court rejected Mr. Koontz's counterclaim and crossclaims and Ms. Kennette's counterclaims and they are not before us.

bench trial, the district court rejected Summit's breach of contract claim. It found the parties did not enter into any written contract regarding the construction project, so Summit's breach of contract claim turned on the existence of an oral agreement between the parties. The court determined Summit failed to show it had an enforceable oral contract with either Mr. Koontz or Ms. Kennette as the parties had not reached an agreement on sufficiently definite terms. It also rejected Summit's unjust enrichment claim against Mr. Koontz because Summit had not clearly informed Mr. Koontz that he was responsible for payment and Summit had not clearly established its damages. Summit timely appealed.

## STANDARD OF REVIEW

[¶10] The question of "[w]hether an oral contract exists is a question of fact to be determined by the trier of fact." *Meima v. Broemmel*, 2005 WY 87, ¶ 58, 117 P.3d 429, 448 (Wyo. 2005) (quoting *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo. 1997)). We apply the following standard when reviewing a district court's factual findings after a bench trial:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. . . .

*Testolin v. Thirty-One Bar Ranch Co.*, 2024 WY 6, ¶ 15, 541 P.3d 455, 460 (Wyo. 2024) (quoting *Lyman v. Childs*, 2023 WY 16, ¶ 10, 524 P.3d 744, 751 (Wyo. 2023) (quoting *Fuger v. Wagoner*, 2020 WY 154, ¶ 8, 478 P.3d 176, 181 (Wyo. 2020))).

[¶11] We review the district court's unjust enrichment decision for an abuse of discretion. *Elec. Wholesale Supply Co. v. Fraser*, 2015 WY 105, ¶ 29, 356 P.3d 254, 261–62 (Wyo. 2015) (citing *Windsor Energy Grp., L.L.C. v. Noble Energy, Inc.*, 2014 WY 96, ¶ 23, 330 P.3d 285, 291–92 (Wyo. 2014)). "A court abuses its discretion when it acts in a manner

which exceeds the bounds of reason under the circumstances. . . . The ultimate issue for us to determine is whether the trial court could reasonably conclude as it did." *Circle C Res. v. Hassler*, 2023 WY 54, ¶ 22, 530 P.3d 288, 295 (Wyo. 2023) (citations omitted).

***DISCUSSION***

### I.  *Did the district court clearly err by finding Summit did not have an enforceable oral contract with either Mr. Koontz or Ms. Kennette?*

[¶12]  To establish a breach of contract claim, the plaintiff must show, among other things, the existence of "a lawfully enforceable contract." *Kappes v. Rhodes*, 2022 WY 82, ¶ 17, 512 P.3d 31, 36 (Wyo. 2022) (quoting *Halling v. Yovanovich*, 2017 WY 28, ¶ 13, 391 P.3d 611, 616–17 (Wyo. 2017)).  The basic elements of a contract are "[a]n offer, acceptance, and consideration[.]" *Bouwens v. Centrilift*, 974 P.2d 941, 946 (Wyo. 1999) (quoting *Miller v. Miller*, 664 P.2d 39, 40 (Wyo. 1983)).  *See also Kappes*, ¶ 18, 512 P.3d at 36 ("The contracting process is usually straightforward.  One party makes a manifestation of assent, called an offer, to another; the latter then makes a manifestation of assent, called an acceptance, to the former." (citation omitted)).  There must be mutual assent to the same terms and those terms must be sufficiently definite to allow a court to determine the extent of a promisor's duties and whether there has been a breach. *Bouwens*, 974 P.2d at 946; *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 334 (Wyo. 1986).  The same rules apply to oral contracts.  "For an oral contract to exist, its essential terms must be defined with certainty." *Davidson-Eaton v. Iversen*, 2022 WY 135, ¶ 44, 519 P.3d 626, 640 (Wyo. 2022) (citing *Fuger*, ¶ 11, 478 P.3d at 181–82, and *Fowler*, 933 P.2d at 504). "Courts do not have the power to supply the terms of an agreement, so an oral agreement is unenforceable unless the contract terms are 'so certain that the court can require the specific thing agreed upon to be done.'" *Id.* (quoting *Fowler*, 933 P.2d at 504, and citing *Rialto*, 714 P.2d at 334–35).

[¶13]  The district court found Summit failed to show it had an enforceable oral contract with either Mr. Koontz or Ms. Kennette because the parties did not mutually assent to sufficiently definite terms.  It determined the project was one project rather than two separate projects and the project progressed without any clear understanding of how much work was to be performed, how it would be paid for, and who would be paying.  It also found that "Mr. Smith, acting for Summit, was inconsistent in his identification of the project as a bid contract for the . . . addition, or as a time and materials project," "did not know to what extent Mr. Koontz and Ms. Kennette may have agreed to share project costs[,] and could not testify specifically as to which of the defendants authorized all of the different parts of the work in the [existing home]."  It further decided there was no agreement between the parties regarding labor costs, the amount of Summit's markup on labor, building materials, and the work of its subcontractors, or that interest would be charged on unpaid balances.

4

[¶14]  Summit argues the district court clearly erred when it decided Summit did not have an enforceable oral contract with either Mr. Koontz or Ms. Kennette.  It claims the court's finding that the project was one project rather than two was contrary to the evidence which showed there were two distinct projects—the original bid for the addition and a time and materials contract for the work performed on the existing home.  It also maintains the court erred by finding there was no enforceable oral contract between the parties because Mr. Smith was unclear as to whether he believed Ms. Kennette would pay for everything or whether she would share the costs with Mr. Koontz.  According to Summit, this finding is contrary to the evidence and is irrelevant to whether it had an enforceable oral contract with either Mr. Koontz or Ms. Kennette.  Finally, Summit argues "[i]nvoices were presented and invoices were paid.  This was the establishment of the terms of the contract.  The terms are clear and [Mr. Koontz and Ms. Kennette] violated the terms of the contract by not paying [on] the final invoices."  In the alternative, Summit argues that at a minimum there was agreement to the final invoice as the work on that invoice was performed, the work was accepted, and there was partial consideration for this invoice when Ms. Kennette paid $41,000 in January 2020.

[¶15]  The district court did not clearly err when it found Summit had failed to show the parties had an enforceable oral contract.  The trial evidence demonstrated the parties did not have an enforceable oral contract because they had not mutually agreed to sufficiently definite terms.

[¶16]  The parties had no clear understanding as to whether the entire project was a time and materials contract or whether it was a bid contract for the addition and a time and materials contract for the work on the existing home.  Mr. Smith testified that after meeting with Mr. Koontz and Ms. Kennette he provided them with a bid for the addition.  This bid, which Mr. Smith later labeled as an invoice (Invoice 248), was for $161,460.  Mr. Smith testified that within a week of beginning the construction of the addition, Summit discovered work needed to be performed on the existing home and Mr. Koontz and Ms. Kennette agreed to gut the entire home and proceed with a time and materials contract.  According to Mr. Smith, all of Summit's time and materials for the project were reflected on two invoices—Invoice 249 dated February 28, 2019, and Invoice 250 dated May 9, 2019.  This testimony was consistent with Summit's representations during discovery, where its unwavering position was that the entire project—construction of the addition and the work on the existing home—proceeded on a time and materials contract.  However, at trial, Ms. Kennette presented evidence showing that the total amount she paid on the project ($200,000) exceeded the amount of time and materials reflected on Invoices 249 and 250.  When confronted with this evidence, Summit, through Mr. Smith, claimed for the first time that the work on the addition was a bid contract and the work on the existing home was time and materials.

[¶17]  The parties did not have a definite agreement on the scope of the work to be performed or who was going to pay, particularly with respect to the work performed on the

5

existing home. During discovery, Summit stated Ms. Kennette was going to pay for the addition and Mr. Koontz was going to pay for the renovations to the existing home. At trial, Mr. Smith testified he believed both Mr. Koontz and Ms. Kennette were responsible for the cost of construction and both knew about and expressly authorized the addition and the work on the existing home. Ms. Kennette claimed she only wanted and agreed to pay for the addition and "assumed" Mr. Koontz would pay for the remodel. She admitted, however, that it was her decision to put in an HVAC system, to pour concrete under the existing home, and to remove the carport and that she often supported Mr. Koontz by paying his monthly bills because "he didn't have the money." Mr. Koontz testified he did not authorize or agree to pay for the addition or the work on the existing home. He claimed he was unaware of the demolition and renovations occurring on the existing home because he lived in his camper in Meeteetse, Wyoming, during the week for work from mid-March to mid-May 2019, moved his camper to Douglas, Wyoming, for work in mid-May 2019, and did not return to his home until late fall 2019. Pictures of the project introduced into evidence and the testimony of Summit's foreman and subcontractors contradict this testimony. The pictures show Mr. Koontz's camper at his home on dates when demolition and remodeling of the existing home were occurring. They also show that work was occurring on the existing home in late February to mid-May 2019. During this time, Mr. Koontz was home from Meeteetse on the weekends and had not moved his camper to Douglas. Summit's foreman and subcontractors testified they talked with Mr. Koontz about the demolition and remodeling of the existing home. They stated he knew about the work and even made specific requests including having the plumber order polished brass bathroom fixtures. The parties' testimony, while conflicting, supports the district court's finding that the "project progressed without any clear written or oral understanding of how much work was to be performed or how it was going to be paid for."

[¶18] The evidence also showed the parties had no mutual understanding concerning Summit's price for labor, its markup on labor, materials, and subcontractor's costs, or whether interest would be charged on late payments. Mr. Koontz's expert testified it is standard practice for the parties to agree to the price a general contractor will charge for labor and to the markup percentage. The evidence showed Summit charged for labor, materials, and subcontractor costs and added a markup on these items. There was no evidence that the parties had an agreement on the price Summit would charge for labor, and Mr. Smith admitted there was no agreement on Summit's markup percentage. Similarly, although Mr. Smith testified it was "a common thing" to charge interest on amounts owed and he had the right under the law to charge interest, he admitted the parties did not have an agreement that interest would be charged for failure to pay.

[¶19] Summit's reliance on its invoices as "clear[ly]" defining the terms of the parties' oral contract is unavailing. Summit submitted three invoices during the course of the project. The first invoice (Invoice 248) was Summit's original bid for the addition which Mr. Smith converted to an invoice. The other two invoices (Invoices 249 and 250) itemized charges for materials, labor, plumbing, concrete, insulation, electrical, site work,

6

excavation, HVAC, and skid steer time. None of these invoices reflect whether they were based on the bid or on time and materials. They do not identify the scope of work to be performed, who authorized the work, who would pay, the unit price for labor, the percentage of markup, the quantities of materials purchased, that interest would be charged if the bill was not paid, or the percent of interest to be charged.

[¶20] Summit's argument that Ms. Kennette's payment on the final invoice represents an agreement between the parties with respect to that invoice is unpersuasive. The fact Ms. Kennette paid Summit $41,000 in January 2020 does not demonstrate an agreement by her or Mr. Koontz to the scope of the project, the cost of the project, or the specific charges. As we explained above, none of Summit's invoices, including the final invoice, contain sufficiently definite terms by which a court could determine the promises made by the parties and whether any of those promises had been breached.

[¶21] As the district court aptly found:

> The case is perhaps an example of what can happen when parties don't appear to have a clear understanding of what they believe they agreed to, had no definitive agreement of the overall work to be performed, or a mutual understanding of such terms as a "bid" or a "firm bid" in the construction trade, if there was any such bid.

The district court did not clearly err by finding the parties had failed to create an enforceable oral contract.

## II. Did the district court abuse its discretion by deciding Summit failed to sufficiently prove its damages with respect to its unjust enrichment claim?

[¶22] Unjust enrichment (or *quantum meruit*) is an equitable remedy which implies a contract so that one party may recover damages from another. One seeking damages based on unjust enrichment must prove four elements:

(1) Valuable services were rendered, or materials furnished,

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and,

(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Elec. Wholesale Supply*, ¶ 27, 356 P.3d at 261 (quoting *Bowles v. Sunrise Home Ctr., Inc.*, 847 P.2d 1002, 1004 (Wyo. 1993)). In addition to establishing the above elements, the plaintiff must prove its damages. *Redland v. Redland*, 2012 WY 148, ¶¶ 153–154, 288 P.3d 1173, 1207–08 (Wyo. 2012). *See also Gill v. Lockhart*, 2022 WY 87, ¶ 34, 512 P.3d 971, 981 (Wyo. 2022) (plaintiff bears the burden of proving his damages (citing *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 78, 437 P.3d 758, 786 (Wyo. 2019))).

[¶23] The district court found Summit satisfied the first three elements of its unjust enrichment claim—Summit provided valuable services and materials in renovating Mr. Koontz's home even though the home was not finished. It concluded, however, that Summit's claim failed under the fourth element because there was no evidence that Summit ever told Mr. Koontz, either when the project started or during construction, that it intended him to pay for the work. The district court also decided Summit failed to prove the amount by which Mr. Koontz was unjustly enriched, i.e., its damages. It found Summit's invoices were not detailed, were unsupported by receipts showing the materials utilized, and did not meet industry standards for explaining to a client what work was completed and how the cost figures were reached. It also found Summit's business check register did not show how the amounts paid out on the project were consistent with what Mr. Smith testified was owed. In sum, the court decided:

> Unjust enrichment is an equitable remedy. In this case, considering the circumstances the parties are left in, the Court cannot find it equitable to award Summit damages. Ms. Kennette has paid $200,000 into a home for which she will receive no benefit, at least as things stand the way they are currently. Mr. Koontz is left with a home that is unfinished, though, as stated, he is not without fault. He was aware of the state of construction as it progressed. Summit claims to be owed money but has not shown how it clearly informed Mr. Koontz that he was responsible for payment and has not provided a sufficiently detailed showing that awarding it damages provides an equitable rendering under the circumstances.

[¶24] Summit argues the district court erred by determining it had not satisfied the fourth element of its unjust enrichment claim. It maintains it is immaterial that Summit was never clear on whether Ms. Kennette or Mr. Koontz was supposed to pay for the work as that

issue was between mother and son. According to Summit, it is only relevant that it performed the work on Mr. Koontz's home, he was aware of the work, and no one told Summit not to perform the work. Summit argues its subcontractors interacted with Mr. Koontz and he directed their work and ordered parts through them. According to Summit, its subcontractors expected to be paid and Summit paid them on Mr. Koontz's behalf. Summit argues by denying its unjust enrichment claim, the district court "basically [gave Mr.] Koontz an entirely updated and upgraded remodeled house[.]"

[¶25] Summit's argument is limited to the elements of an unjust enrichment claim. We need not decide, however, whether Summit established those elements because we cannot find that the district court abused its discretion when it concluded Summit had failed to prove its damages.

[¶26] In general, "a plaintiff has the burden of producing evidence to prove his damages to a reasonable degree of certainty." *Gill*, ¶ 34, 512 P.3d at 981 (citing *Mantle*, ¶ 78, 437 P.3d at 786). "A court may not resort to speculation or conjecture in determining the proper amount to award." *Gill*, ¶ 39, 512 P.3d at 982 (quoting *Mantle*, ¶ 78, 437 P.3d at 786).

> Generally, in an action for restitution for work, labor, services, or materials on an implied contract or in quantum meruit, the plaintiff must prove the value thereof in order to be entitled to recover. The proper measure of recovery is limited to the value of the actual benefit received and retained by the defendant as a result of plaintiff's part performance.

43 Am. Jur. POF 2d *Recovery for Part Performance of Contract* § 9, at 546 (1985). *See also Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 764 (S.C. 2009) ("quantum meruit requires a showing of actual damages resulting from the wrongful retention of benefits (goods or services) by the defendant"); *Gillette v. Storm Circle Ranch*, 619 P.2d 1116, 1120 (Idaho 1980) ("Although damages need not be proven with mathematical precision, the damages, i.e., the value of any benefit unjustly received by the defendant in an action based upon unjust enrichment, must be proven to a reasonable certainty.").

[¶27] After review of the record, we find the district court reasonably concluded that Summit failed to establish its damages to a reasonable degree of certainty. The checks and debits associated with the project from Summit's business bank account were substantially less than the charges shown on Summit's invoices and substantially less than the amount Ms. Kennette paid Summit. While the district court found the difference is likely explained by the amount of Summit's markup and the evidence showed it is standard practice for a general contractor to markup on labor and materials, Mr. Smith did not testify to the percentage of Summit's markup but rather stated it varied depending on the amount of work Summit performed. Likewise, Summit's invoices were not sufficiently detailed to

determine the work performed, the amount of materials purchased, the hourly rate Summit charged for labor, or the percentage of its markup on labor and materials. We agree with the district court's summation of the issue and its conclusion: "When a party alleges lack of payment under an unjust enrichment claim, that party must be able to convince a court that the amounts someone is unjustly enriched are clearly identified. Summit's paperwork and the related testimony [did] not meet that standard."

## *CONCLUSION*

[¶28] The district court did not clearly err by finding the parties did not have an enforceable oral contract and did not abuse its discretion by deciding Summit had failed to adequately prove its damages with respect to its unjust enrichment claim. The district court's decision is affirmed.