# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 59

**APRIL TERM, A.D. 2025**

**May 28, 2025**

RICK HOLLOWAY and JOHN HOSKIN,

Appellants
(Plaintiffs),

v.

HIDDEN CREEK OUTFITTERS, LLC and
PARK COUNTY TITLE COMPANY, LLC,

Appellees
(Defendants).

S-24-0271

*Appeal from the District Court of Park County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellants:*
> David Michael Hill and Larry B. Jones, Burg Simpson Eldredge Hersh & Jardine, P.C, Cody, Wyoming.  Argument by Mr. Jones.

*Representing Appellee Hidden Creek Outfitters, LLC:*
> Branden S. Vilos, Branden S. Vilos, Attorney at Law, P.C., Cody, Wyoming. Argument by Mr. Vilos.

*Representing Appellee Park County Title Company, LLC:*
> Randy L. Royal, Randy L. Royal, P.C., Greybull, Wyoming.  Argument by Mr. Royal.

*Before BOOMGAARDEN, C.J., and FOX\*, GRAY, FENN, and JAROSH, JJ.*

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f)(2023), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Rick Holloway and John Hoskin appeal from the district court's order finding they failed to prove damages with sufficient certainty on their breach of contract claims against Hidden Creek Outfitters, LLC and on their breach of the escrow agreement and breach of fiduciary duty claims against Park County Title, LLC.  We affirm.

## *ISSUES*

[¶2]    Messrs. Hoskin's and Holloway's appeal presents two dispositive issues:

> 1.  Did the district court err when it found plaintiffs failed to prove damages?
>
> 2.  Did the district court abuse its discretion when it denied attorney's fees?

## *FACTS*

[¶3]    The only way to reach the UXU Resort Ranch is to cross the June Creek Bridge, which spans the North Fork Shoshone River.  The Ranch rests in the Shoshone National Forest and requires a special use permit from the U.S.D.A. Forest Service to operate.  William Perry, the sole member of Hidden Creek Outfitters, LLC (Hidden Creek), owned and operated the Ranch.  In March 2021, Rick Holloway and John Hoskin (H&H) entered into a *Commercial Sales Agreement* to buy the Ranch from Hidden Creek.  The *Sales Agreement* transferred a lodge, cabins, horses and tack equipment, the special use permit, the bridge, and other permanent fixtures to H&H.

[¶4]    Prior to closing, the parties learned the Forest Service required a fracture critical inspection report and a load test rating of the bridge before it would transfer the special use permit to H&H.  Because it was impossible to complete the inspection before June 1, 2021, the original closing date, H&H and Hidden Creek postponed closing and entered into an *Addendum to Commercial Sales Agreement* on June 4, 2021, in which $200,000 of the purchase price was to be set aside in escrow "to be used by [Hidden Creek] to conduct the bridge inspection and load test and any repairs required by the U.S.D.A. Forest Service."  The *Addendum* further stated the escrowed funds were "for use to pay for the completion of a bridge inspection, a load test on said bridge and any repairs deemed necessary by Engineering Associates and/or the U.S.D.A. Forest Service."  The parties agreed the escrow funds represented "the limit of [Hidden Creek's] entire obligation of any issue associated with the bridge for inspections, load testing and repairs up to and including complete replacement."

1

[¶5]    On June 9, 2021, H&H, Hidden Creek, and Park County Title executed a *Consent to Hold Escrowed Funds Agreement* that obligated Park County Title to hold the funds for the parties until December 31, 2021, or until H&H and Hidden Creek provided further instruction.  The *Consent to Hold* provided: "[w]hen instructed that both [Hidden Creek] and [H&H] are in Agreement, Title Company shall release unexpended funds to any unpaid contractor and [Hidden Creek] . . . Final release of funds to [Hidden Creek] shall not occur until the U.S. Forest Service has inspected and approved condition of bridge."  The parties closed the sale of the Ranch and Hidden Creek placed $200,000 in escrow with Park County Title that same day.

[¶6]    Three engineering companies inspected the bridge: Engineering Associates, Engineering Operations, and Alfred Benesch & Company.  Engineering Associates performed a structural condition assessment and issued a report on June 2, 2021.  Engineering Associates made only visual observations of the bridge and recommended various repairs.  Engineering Associates was not qualified, however, to perform the fracture critical inspection on the bridge,[1] so it retained Engineering Operations, LLC to conduct that inspection.

[¶7]    Engineering Operations performed its inspection and issued a report to Hidden Creek on June 11, 2021.  The report recommended an immediate 7-ton load limit posting on the bridge.  The report did not identify any "HIGH" priority code[2] recommendations but did include "MEDIUM" priority code[3] recommendations, including the eventual replacement of fractured stringers and sandblasting and repainting of metal members to protect the bridge for its remaining life span.

[¶8]    Four days later, Alfred Benesch & Company also inspected the bridge under an existing contract with the Forest Service to inspect all Forest Service bridges.  H&H learned about the upcoming Benesch inspection in May or early June.[4]  However, Hidden Creek did not learn of this inspection until much later in 2021.

[¶9]    On the day of its inspection, after discovering two failed stringers, Benesch sent an email to H&H and the Forest Service recommending an immediate 3-ton load limit posting and limited traffic on the bridge.  Rachel Spicer, Project Manager for Benesch, stated these limitations should remain until repairs can be made.  She suggested the two failed stringers "need to be addressed immediately."  Hidden Creek did not receive this email.  At trial,

---

[1] A "fracture critical inspection requires that inspectors visually inspect each fracture critical member within arms-reach."

[2] High priority codes identify a structural element that is in severe enough condition to warrant action within 3 months.

[3] Medium priority codes indicate that immediate repair is not necessary, but repairs should be completed with the next 6 months to a year.

[4] Email correspondence between Mr. Hoskin and the Forest Service dated June 8, 2021, show arrangements being made for the inspection.

Mr. Perry testified that he only learned about the 3-ton posting and limited traffic recommendations in October 2021.

[¶10]   Benesch issued its report to the Forest Service on September 13, 2021.  The report recommended a "single 3-ton posting and limited crossing until [the] damaged stringers are replaced."  The Benesch report rating summary was for "as-is condition with only the west half of the bridge open to traffic."  The Forest Service responded by installing load posting signs and barricades to restrict traffic.

[¶11]   After Engineering Associates and Engineering Operations completed their inspections, Engineering Associates submitted two invoices to Park County Title.  On August 9, 2021, Park County Title issued a check for $10,006.27 to Engineering Associates.  Park County Title issued a second check for $12,035.11 to Engineering Associates on August 17, 2021.  Shortly after Park County Title paid the invoices, Engineering Associates provided the inspection reports to the Forest Service and Cayla Norris, the manager of Hidden Creek.  Ms. Norris then called the Forest Service to confirm receipt of the reports, and the Forest Service told her the special use permit could be transferred to H&H.

[¶12]   Ms. Norris called Park County Title on August 23, 2021, and told the office that the Forest Service had approved the bridge[5] and the remaining escrowed funds could be disbursed to Hidden Creek.  In response, Park County Title prepared a *Consent to Release Escrowed Funds*. It released the remaining $177,958.62 of escrow funds to Mr. Perry after obtaining his signature.  Mr. Perry was the only one to sign the *Consent to Release*.  Park County Title did not confer with H&H, and H&H never instructed Park County Title to release the funds.  In fact, H&H did not learn about the released funds until February 2022.

[¶13]   H&H and the Forest Service exchanged emails in early November 2021 about how to reconcile conflicts in the Engineering Operations report and the Benesch report (7-ton versus 3-ton posting).  The Forest Service decided to use the 3-ton posting until "the stringers and decking" were replaced.  After which, it would use the 7-ton load rating from Engineering Operations. The Forest Service also indicated an attempt to amend its contract with Benesch "to get a load rating with replaced stringers."  H&H never included Hidden Creek in these communications.  Because winter was approaching, H&H assumed any repairs to the bridge would have to wait until spring.  A 3-ton posting remained, and only limited traffic allowed, throughout the winter.

[¶14]   When H&H learned about the released escrow funds in February 2022, they insisted Park County Title retrieve the funds.  Park County Title contacted Hidden Creek, but Hidden Creek indicated that the funds had already been expended.  H&H then hired CC&G

---

[5] The trial court did not find evidence that the Forest Service had ever "approved" the bridge.  At trial, Ms. Norris explained when she said the bridge was approved, she meant only, "the permit could be transferred."

to repair and reconstruct the bridge for a 16-ton rating, so that emergency vehicles could cross the bridge. CC&G replaced the deck, the wood stringers, and installed a pedestrian barrier. When CC&G completed its work in October 2022, H&H hired another engineering firm to conduct a load test. Ultimately, H&H spent $194,799.64. In March 2023, H&H signed the special use permit and the Ranch opened for business that summer.

[¶15] H&H filed suit on August 5, 2022, before CC&G completed work on the bridge. Against Hidden Creek, H&H alleged breach of contract and breach of the covenant of good faith and fair dealing. Against Park County Title, H&H alleged breach of contract and breach of fiduciary duty. H&H sought damages from Hidden Creek for costs incurred to repair the bridge, lost profits, and attorney's fees. H&H sought repayment of $200,000 in escrow and attorney's fees from Park County Title.

[¶16] Hidden Creek responded with a counterclaim for breach of contract and breach of the covenant of good faith and fair dealing. Park County Title filed an indemnification crossclaim against Hidden Creek in the event Park County Title was found to be the sole and proximate cause of any damages suffered by H&H.

[¶17] After a bench trial in March 2024, the district court found: (1) Hidden Creek and H&H each breached the implied covenant of good faith and fair dealing in the *Addendum* and the *Consent to Hold*; (2) Park County Title breached the *Consent to Hold* when it released the escrow funds without H&H's approval; and (3) Park County Title is liable for any damages owed by Hidden Creek to H&H in the event Hidden Creek is unable to pay. As to damages resulting from the breaches, the district court found, (1) Hidden Creek did not suffer any damages, and (2) because H&H failed to show what repairs were necessary or required under the agreements, they were entitled to only nominal damages. The court declined to award attorney's fees. This appeal followed.


## DISCUSSION

### I.      The district court did not err when it found H&H failed to prove damages.


[¶18] Damages "must be proven with a reasonable degree of certainty, but proof of exact damages is not required." *Robinson v. Black*, 2025 WY 25, ¶ 20, 564 P.3d 1030, 1037 (Wyo. 2025) (quoting *WSP, Inc. v. Wyo. Steel Fabricators & Erectors, Inc.,* 2007 WY 80, ¶ 19, 158 P.3d 651, 655 (Wyo. 2007)). "A court may not resort to speculation or conjecture in determining the proper amount to award." *Summit Constr. v. Koontz*, 2024 WY 68, ¶ 26, 550 P.3d 106, 114 (Wyo. 2024) (quoting *Gill v. Lockhart*, 2022 WY 87, ¶ 39, 512 P.3d 971, 982 (Wyo. 2022)). A court may allow nominal damages when no actual damages are proven. *Goforth v. Fifield*, 2015 WY 82, ¶ 44, 352 P.3d 242, 250 (Wyo. 2015) (citing *Bellis v. Kersey*, 2010 WY 138, ¶ 20, 241 P.3d 818, 825 (Wyo.2010)). "Damages are

4

factual findings which we do not reverse unless they are clearly erroneous." *Ruby Drilling Co., Inc. v. Duncan Oil Co., Inc.,* 2002 WY 85, ¶ 29, 47 P.3d 964, 973 (Wyo. 2002) (citing *Cross v. Berg Lumber Co.*, 7 P.3d 922, 928 (Wyo. 2000)). "Factual findings are clearly erroneous when, although there is evidence to support them, the reviewing court is left with the definite and firm conviction upon review of the entire record that the district court made a mistake." *Morrison v. Hinson-Morrison*, 2024 WY 96, ¶ 18, 555 P.3d 944, 953 (Wyo. 2024) (citing *Claman v. Popp*, 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012)). "To the extent findings of fact are in question, we consider only the evidence of the successful party, ignore the evidence of the unsuccessful party, and grant the successful party every favorable inference that can fairly be drawn from the record." *Id.* (citing *Holland v. Holland*, 2001 WY 113, ¶ 8, 35 P.3d 409, 412 (Wyo. 2001)).

[¶19] On appeal, H&H maintain Hidden Creek breached the implied covenant of good faith and fair dealing in the *Consent to Hold* and the *Addendum* by seeking and retaining the escrow funds without their knowledge or consent, but their argument focuses primarily on Hidden Creek's alleged breach of the contracts' express terms. H&H argue the contracts were properly integrated, so when Hidden Creek obtained the escrow funds before the Forest Service reconciled the reports and approved the condition of the bridge, Hidden Creek expressly breached not only the *Consent to Hold,* but the *Addendum* and the *Sales Agreement* as well. H&H reassert Park County Title breached its contractual and fiduciary obligations when it released the funds without H&H's consent. By releasing the escrow funds, and leaving H&H with a bridge on which traffic was limited under 3-tons, H&H claim Hidden Creek and Park County Title robbed them of the entire bargain: an operating Ranch. H&H claim they had no other option but to repair the bridge and establish reasonable access for their customers. Accordingly, H&H contend they are entitled to damages for the actual costs to repair the bridge ($194,799.64) and lost profits ($140,000). In the alternative, H&H request the amount released from escrow ($177,958.62). Park County Title and Hidden Creek argue H&H failed to prove any actual damages.

[¶20] The district court agreed with H&H that Park County Title breached the express terms of the *Consent to Hold,* and Hidden Creek breached the covenant of good faith and fair dealing in the *Consent to Hold* by requesting and accepting the released escrow funds before determining whether the Forest Service had approved the bridge's condition. However, the district court did not find Hidden Creek breached any express terms in the three agreements.[6] The contracts promised the transfer of the special use permit, which was available to H&H in August 2021. H&H were also entitled to a bridge inspection and load testing, and three engineering companies performed this work. Finally, the engineering reports came only with recommendations for repairs, and "[t]here is no express

---

[6] The district court found the parties fully incorporated the *Sales Agreement* into the *Addendum*, but only partially incorporated those agreements into the *Consent to Hold*. As a result, the court construed the *Consent to Hold* with the *Sales Agreement* and the *Addendum* only as it relates to the escrow terms and the bridge.

5

language obligating either party to push the issue and obtain a conclusive declaration of necessary repairs from the engineering firms or the Forest Service." Absent any showing that H&H had expended money to complete repairs deemed necessary or required by Engineering Associates and/or Forest Service, the district court found H&H failed to prove damages with sufficient certainty and awarded nominal damages. The record supports the district court's findings.

[¶21] H&H present several contract issues and arguments, but the law on damages is straightforward. Even if we were to disagree with the district court and find Hidden Creek expressly breached the *Sales Agreement*, the *Addendum*, and the *Consent to Hold*, H&H were required to prove damages. *Eiden Construction, LLC v. Hogan & Associates Builders, LLC*, 2024 WY 138, ¶ 43, 561 P.3d 304, 317–318 (Wyo. 2024) ("To prove a breach of contract, the proponent must show a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." (internal quotations and citations omitted)). "Damages cannot be presumed." *Willmschen v. Meeker*, 750 P.2d 669, 672 (Wyo. 1988) (citing *State ex rel Scholl v. Anselmi*, 640 P.2d 746, 750 (Wyo. 1982)). H&H bear the same burden to establish their right to redress for any contract breach or breach of fiduciary duty by Park County Title. *In re J. Kent Kinniburgh Revocable Tr.*, 2023 WY 56, ¶ 23, 530 P.3d 579, 587 (Wyo. 2023) ("To establish a claim for breach of fiduciary duties, the plaintiff must show a duty based on a fiduciary relationship, breach of the duty, and the breach caused him damage." (citing *Gowdy v. Cook*, 2020 WY 3, ¶ 27, 455 P.3d 1201, 1208 (Wyo. 2020))).

[¶22] Hidden Creek's and H&H's contracts contemplated a series of events: (1) necessary repairs would present themselves after a fracture critical inspection, (2) the Forest Service or Engineering Associates would conclusively identify what repairs were required, and (3) the parties would work together to schedule the necessary repairs. Under the *Addendum*, the parties agreed, "[t]he escrowed funds will be available for use to pay for the completion of a bridge inspection, a load test on said bridge and any repairs *deemed necessary* by Engineering Associates of Cody Wyoming and/or the U.S.D.A. Forest Service." (emphasis added). The *Consent to Hold* language varies slightly from the *Addendum*: "funds being held in escrow are for the inspection of the bridge by Engineering Associates load limit testing companies, and the U.S. Forest Service, and for any repairs/replacement *required* from said report results.[7] (emphasis added)

[¶23] Any actual damages suffered by H&H, therefore, could only relate to monies H&H spent on necessary or required bridge repairs that otherwise should have been paid before

---

[7] As the district court noted, miscommunication between the parties contributed to the uncertainty and debate around necessary repairs. After reviewing Engineering Operations' report and learning the special use permit was ready for transfer, Hidden Creek assumed no repairs were required. Hidden Creek did not discuss its assumption with H&H. Upon receiving the Benesch report, H&H assumed there were big problems with the bridge and repairs would be required. But H&H did not share the Benesch findings with Hidden Creek, and never bargained to extend the term of the *Consent to Hold*.

the funds were prematurely released from escrow. *Crouch v. Cooper*, 2024 WY 98, ¶ 26, 556 P.3d 199, 207 (Wyo. 2024) ("In an action for breach of contract, the legal remedy is an award of damages designed to place the plaintiff in the same position as if the contract had been fully performed, less proper deductions." (citing *Hanft v. City of Laramie*, 2021 WY 52, ¶ 42, 485 P.3d 369, 383 (Wyo. 2021))). However, none of the bridge inspections or subsequent reports conclusively established what repairs were necessary or required, as related to the Ranch sale or to transfer of the special use permit.[8]

[¶24] Engineering Operations inspected the bridge and recommended various repairs. Benjamin Kenney, Senior Project Engineer for Engineering Operations, performed the fracture critical inspection in accordance with the National Bridge Inspection Standards, as required by the Forest Service. His report recommended an immediate 7-ton posting[9] on the bridge. In the less immediate future, Mr. Kenney suggested sandblasting and repainting the metal truss and floor beams to preserve the bridge's lifespan. The report noted, "Panels 3 and 8 where there are fractured or severe splits in stringers, all stringers should be replaced with steel W12 members" and "decking in these panels should be replaced at this time."[10] Finally, a plan should be developed for the "replacement and monitoring [of] all [fracture critical members] and fatigue prone deficiencies prior to the Ranch opening each season until replacement." Mr. Kenney's report did not conclusively find necessary or required repairs, partly because the bridge posed no immediate safety risk, but also because his inspection was not tailored to find necessary or required repairs as contemplated by the contract. Neither the *Addendum* or the *Consent to Hold* referenced any load specifications or other criteria that would trigger the need for a repair.

[¶25] Similarly, the Benesch report did not clearly set forth necessary or required repairs. Initially, Rachel Spicer warned H&H and the Forest Service that "two stringers have completely failed" and "need to be addressed immediately." But she removed the urgent language from the official report dated September 13, 2021, where she recommended a "single 3-ton posting and limited crossings until stringers are replaced." Like Mr. Kenney's report, the Benesch report required no immediate repair, so long as the bridge

---

[8] H&H contracted with CC&G to replace all the stringers, decking, driving track, and railing at the cost of nearly $195,000, so they would have a 16-ton load rated bridge. To support H&H's damages claim, a CC&G representative testified at trial that the bridge was in such bad shape, it was necessary to completely replace the bridge's wood components. Because the contracts specified that Engineering Associates and/or the Forest Service were to identify any necessary or required repairs, CC&G's opinion was irrelevant. Moreover, the evidence showed CC&G is not qualified to perform a fracture critical inspection or a load rating.

[9] Previously, the bridge was open with no load restrictions. Mr. Kenney recommended the 7-ton posting because the bridge's original gussets are under-designed for the heavy trucks of our time.

[10] Fractured stringers did not concern Mr. Kenney. When a stringer is fractured, he explained, the deck disburses weight to other stringers, and those stringers carry a little more weight than if all were functioning properly. To preserve the bridge, Mr. Kenney recommended replacing those stringers within a reasonable timeframe.

was posted at 3-tons.[11]   Neither report made reference to the special use permit, or conditions related to its transfer.

[¶26]   The Forest Service installed load posting signs and barricades to restrict traffic as recommended.   Forest Service communications then focused on reconciling the two reports.  It decided to keep the bridge posted at 3-tons until the damaged stringers could be replaced, and then determine if the 7-ton load rating from Engineering Operations would be appropriate.   There is no evidence the Forest Service ever required specific repairs— only the 3-ton posting and barricades.   In fact, Mr. Hoskin testified he never got a firm answer from the Forest Service about what repairs were required.   Moreover, the record is clear H&H's entitlement to the special use permit was unaffected by the bridge inspection reports.

[¶27]   Ideally, the inspection reports provided by Engineering Operations or the Benesch Company would have determined necessary repairs, but they did not.   Because the record shows H&H could not demonstrate what repairs were deemed necessary or required, the district court did not clearly err when it held H&H failed to prove damages with sufficient certainty.   *Summit Constr.*, 2024 WY 68, ¶ 10, 550 P.3d at 110 ("Findings of fact will not be set aside unless they are clearly erroneous." (citation omitted)).   The court therefore properly awarded H&H only nominal damages.  *Goforth*, 2015 WY 82, ¶ 44, 352 P.3d 242, 250 (when no actual damages are shown, Wyoming allows for nominal damages. (citing *Bellis*, 2010 WY 138, ¶ 20, 241 P.3d 818, 825)).[12]

[¶28]   We also agree with the district court that H&H failed to support its claim for lost profits stemming from the bridge dispute.   Notably, the *Addendum* expressly limits Hidden Creek's bridge-related obligations to $200,000.   It did not allow for lost-profits, and in any event, none were shown.   The bridge never completely closed.   John Hoskin confirmed H&H did not intend to open the Ranch in 2021.   He also testified the Ranch would be unable to accommodate guests for the "full show" in 2022 because H&H were undertaking major improvements around the Ranch.   Those renovations had nothing to do with the bridge.   Finally, while H&H could have accepted the special use permit as early as August 2021, they chose not to do so until two years later.

## II.   The district court did not abuse its discretion when it denied attorney's fees.

[¶29]   H&H contend the district court erred when it declined to award H&H attorney's fees, claiming express provisions in the *Sales Agreement* entitle them to fees for Hidden

---

[11] Ms. Spicer did not testify at trial, but Mr. Kenney interpreted her report to mean that only the 3-ton posting was immediately required.  Also, in his expert opinion, there was little reason for the 3-ton posting, because the stringers are not a controlling factor, and Ms. Spicer did not have "load rating or numerical support" for that determination.

[12] We have interpreted $100 "as the legislature's determination of the maximum amount that can constitute nominal damages." *Id.* at n.9.

Creek's breach.[13]  On this issue, the district court held: "all parties have some fault in the foregoing litigation. The Court finds nothing in the strict interpretation of the contracts or the law that requires it to award attorney fees to any party."

[¶30]  "We review an award of attorney's fees for abuse of discretion."  *Hyatt v. Hyatt*, 2023 WY 129, ¶ 34, 540 P.3d 873, 885 (Wyo. 2023) (citing *McMurry v. McMurry*, 2010 WY 163, ¶ 17, 245 P.3d 316, 321 (Wyo. 2010)).  "A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances."  *Boline v. JKC Trucking*, 2025 WY 27, ¶ 28, 565 P.3d 669, 676 (Wyo. 2025) (citing *Circle C Res. v. Hassler*, 2023 WY 54, ¶ 22, 530 P.3d 288, 295 (Wyo. 2023)).  "The ultimate issue for this Court to determine on appeal is whether the trial court could reasonably conclude as it did."  *Id.* (citing *Heimer v. Heimer*, 2021 WY 97, ¶ 34, 494 P.3d 472, 481–82 (Wyo. 2021)).

[¶31]  Wyoming follows the American rule which makes each party responsible for his own attorney's fees, although the prevailing party may be reimbursed for fees when provided for by contract.  *Morrison*, 2024 WY 96, ¶ 48, 555 P.3d at 959–960 (citing *Circle C*, 2023 WY 54, ¶ 8, 530 P.3d at 292).  Even with a contractual provision for attorney's fees, we have stated a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether if such recovery would be inequitable.  *Id.* (citing *Stafford v. JHL, Inc.*, 2008 WY 128, ¶ 19, 194 P.3d 315, 319 (Wyo. 2008)).

[¶32]  The record supports the district court's finding that both H&H and Hidden Creek bore some fault in this litigation.  As explained above, H&H withheld knowledge of the Benesch inspection for months without informing Hidden Creek about possible necessary repairs, and Hidden Creek did not make reasonable efforts to determine if the Forest Service required repairs before collecting the escrow funds.  We can find no abuse of discretion in the district court's equitable ruling.

[¶33]  We also deny H&H's and Hidden Creek's claims for appellate attorneys' fees.  "When a contract allows for reasonable attorney's fees in enforcing its provisions, those fees are recoverable in the appeal and for trial court matters."  *Mascaro v. Mascaro*, 2024 WY 45, ¶ 24, 547 P.3d 321, 327 (Wyo. 2024) (citing *Stafford*, 2008 WY 128, ¶ 19, 194 P.3d at 319).  However, "it would be inconsistent to award appellate fees after finding no abuse of discretion in the district court's denial of attorney's fees."  *Stafford,* 2008 WY 128, ¶ 19, 194 P.3d at 319 (citing *Ahearn v. Tri–County F.S.B.,* 954 P.2d 1371, 1373 (Wyo.1998)).

[¶34] We therefore affirm the district court's denial of attorney's fees and deny any attorney's fees associated with this appeal.

---

[13] On appeal, H&H only seek attorney's fees from Hidden Creek because the *Sales Agreement* "was not specifically intended to apply to Park County Title."

## CONCLUSION

[¶35] H&H failed to prove they suffered damages as a result of Hidden Creek's alleged breach of contract, express or implied. H&H also failed to prove damages stemming from Park County Title's alleged breaches. The record contains no evidence that Engineering Associates or the Forest Service ever deemed any repair necessary or required. As H&H failed to prove actual damages, the district court did not clearly err when it awarded nominal damages. Because the court did not abuse its discretion when it denied an award of attorney's fees to either party, we also deny any attorney's fees associated with this appeal. Affirmed.